## S. A. Temple v. H. B. Sanborn et al.

### Decided December 2, 1905.

**1.—Town Plat—Dedication.**

Where the proprietor of an addition to a town makes a map of the same, laying it out into squares, lots, streets, etc., and causes such map to be recorded in the county clerk's office, and sells lots with reference thereto, he thereby dedicates the squares, streets, alleys, etc., to the public, and can not revoke the grant after the public has acquired an easement.

**2.—Same—"Railroad Reservation."**

The owner of land adjacent to a town subdivided it into lots and blocks, streets and alleys and made and recorded a map of the same, designating it as an addition to the town; upon the map was shown a long, wide strip lying on both sides of a railroad track and designated as follows: "Reserved for Railway Purposes." The owner sold lots fronting on this reservation, and afterwards sold portions of the reservation to parties who used it for other than railroad purposes. Held, that the owner and his vendees were estopped from appropriating said strip of land to any purpose inconsistent with that for which it was reserved, and the fact that it was dedicated to railroad purposes instead of to the public in general was immaterial; the dedication was of a quasi public character, and not to private purposes.

Appeal from the District Court of Potter County. Tried below before Hon. Ira Webster.

*J. N. Browning, Madden & Trulove* and *W. E. Gee,* for appellant.— If the owner of an addition to a town conveys lots and blocks in such addition with reference to a map or a plat thereof, such act operates as a dedication of all streets, alleys, parks and the like, represented by such map, to public use; and purchasers of lots acquire a right appurtenant to their respective lots to have such streets, parks, alleys and the like kept and held for use for the respective uses and purposes

indicated by such map. Oswald v. Grenet, 22 Texas, 101; Preston v.
Navasota, 34 Texas, 687; Lamar Co. v. Clements, 49 Texas, 355; Corsi-
cana v. White, 57 Texas, 382; Gilder v. Brenham, 67 Texas, 350 (3 S.
W. Rep., 311); Wolf v. Brass, 72 Texas, 136 (12 S. W. Rep., 160);
Bond v. Texas & Pac. Ry. Co., 15 Texas Civ. App., 286 (39 S. W. Rep.,
980); Gillean v. Frost, 25 Texas Civ. App., 371 (61 S. W. Rep., 374);
Weynand v. Lutz, — Texas Civ. App., — (29 S. W. Rep., 1097); Ostrom
v. Arnold, 24 Texas Civ. App., 192 (58 S. W. Rep., 632); City of San
Antonio v. Grandjean, 91 Texas, 434 (41 S. W. Rep., 478); Alley v.
Carleton, 29 Texas, 75-79; City of Llano v. Llano Co., 5 Texas Civ.
App., 132; Atkinson v. Bell, 18 Texas, 474; Parisa v. City of Dallas,
83 Texas, 257; City of Cincinnati v. White, 6 Pet., 431, 10 Cur., 181,
and Roses Notes on U. S. Rep., vol. 3, p. 274; Beatty & Richie v. Kurtz,
2 Peters, 566.

*Reeder & Cooper,* for appellee.—A common law dedication of land
can be for public purposes only. Railway Companies are private corpo-
rations, and therefore can not acquire lands or an easement therein
by a common law dedication. Lake Erie, etc., R. R. Co. v. Whithan,
46 Am. St. Rep., 355; same case in 155 Ill., 514; Anderson's Dict. of
Law, page 323 for definition of Dedication. Cyclopedia of Law and
Procedure, vol. 13, p. 444.

SPEER, ASSOCIATE JUSTICE.—Plaintiff instituted this suit against
defendants to abate as a nuisance certain buildings erected in the vi-
·cinity of his property in violation of certain rights which he alleged
to be appurtenant to his ownership of lot No. 1, block No. 2 of the
Glidden and Sanborn addition to Amarillo, and to recover damages
on account thereof. To be more specific, he alleged, among
other things, in effect, that on and prior to December 15, 1890, Glidden
and Sanborn were the owners of the section of land now known as the
Glidden and Sanborn Addition to Amarillo; that Sanborn, acting for
himself and the other interested parties, cut up said section into
streets, alleys, blocks and lots, and thereby induced the public to pur-
chase said lots for the purpose of establishing a city or town, and made
and caused to be executed and filed maps and plats of said addition;
that said map and plat were filed for record and duly recorded in the
deed records of Potter County, to which map reference was made for
more particular and accurate description; that said maps and plats
show the various streets, alleys, blocks, lots and railroad ground and res-
ervations dedicated to and intended for use as such in the founding,
building and maintaining of such proposed town; that they show
running across said addition in an easterly and westerly direction in
one continuous straight line the line of railroad owned and operated
by the Fort Worth and Denver City Railway Company, on each side
of which is a wide space approximately two hundred feet, shown to
have been intended and dedicated for use for railroad purposes and desig-
nated on each and both maps of said additions (the Glidden and San-
born, and the adjoining addition in the name of one Holland) as
"Reserved for Railway Purposes;" that streets running in easterly and
westerly direction and parallel with said line of railroad are numbered

north and south from such railway reservation, the one on the im-
mediate south side thereof being designated as First Street; that im-
mediately on the south side of said First Street and said railway reser-
vation, near the east edge of the Glidden and Sanborn Addition and the
west line of the Holland Addition, as shown by said maps and plats,
is situated block No. 2 in said Glidden and Sanborn Addition to Ama-
rillo, which block is composed of ten lots, each having a front of sixty
feet and a depth of one hundred and forty feet; lot No. 1 being on the
northeast corner of said block, immediately south of said First Street,
extending one hundred and forty feet along the same and fronting
sixty feet east on Buchanan Street; that after such mapping and platting
of lands and additions, said Glidden and Sanborn began to sell lots and
blocks and land with reference thereto, and purchasers from them
began to build thereon, so that since then a large and very important
part of the residences in said town are located along the east edge of
said addition, south of said line of railroad; and the passenger and
freight depots of the Fort Worth & Denver City Railway Company, the
Pecos and Northern Texas Railway Company, the Southern Kansas
Railway Company of Texas, and the Chicago, Rock Island and Gulf
Railway Company, are located on and along said "Railway Reservation"
immediately east from the said intersection of Buchanan Street at the
northeast corner of lot No. 1 in block No. 2 in said Glidden and San-
born Addition and said railway reservation; that by reason of such
relative locations of the business and residence portions of Amarillo
and said railway reservation, and the location of said depots, said
corner lot No. 1 in block No. 2 became a valuable corner lot on a
popular corner, where a vastly greater part of the public travels and
passes going to and from said depots, and were it not for the wrongful
acts of defendants, would be the most public and valuable lot near
said depots for hotel, restaurant and lodging house purposes; that by
the said mapping and platting of additions and the dedication of said
streets and alleys and the reservation and dedication of said railway
reservation to railway purposes and the location of said depots, the
right to have said railway reservation used for railway purposes only
became and is a right appurtenant to and a permanent easement going
with the title to said lot No. 1 in block No. 2, and is a valuable right
the impairment of which causes great damage to plaintiff as the owner
of said lot; that after putting said maps and plats of record, the de-
fendant Sanborn sold divers lots in said addition to various parties
prior to February 5, 1898, when by some arrangement between himself
and one W. H. Bush, said Bush became the owner of the record title
to all of Sanborn's interest in the property; that while said Bush held
said property and on about May 3, 1899, he conveyed by general war-
ranty deed lots Nos. 1 and 2 in block No. 2 in the Glidden and Sanborn
addition to one J. R. McAllister to have and to hold the said premises with
all and singular, the rights and appurtenances thereto in anywise belong-
ing unto said McAllister and his heirs and assigns forever; that afterward
on about October 8, 1900, said McAllister likewise sold and conveyed
said lots to W. L. Thompson; that Thompson in turn for a valuable
consideration by a similar deed sold and conveyed lot No. 1 to plaintiff,
whereupon he became the fee simple owner of said lot together with

all the rights thereto appertaining and belonging, including the right to have said lot front on said railway reservation and such reservation used for railway purposes only; that he so bought and acquired said lot and the house thereon situated with a view of its advantageous location, it being so situated as to make the same valuable and profitable as a location for hotel, lodging house, restaurant and the like, and expected to improve, use and enjoy the same for said purposes; that at the time he bought it there was, and ever since has been, on said lot a house being used as a boarding and lodging house; and that he and his said assignor bought the property with a view of improving and using the same as a location for a hotel and rooming and lodging house, but have been and are deterred therefrom by the wrongful acts of defendants; that after said Bush had conveyed to said McAllister, said Bush reconveyed to defendant Sanborn all interest in and to Glidden and Sanborn and Holland Additions which had not been previously sold by said Bush; and that about July 1, 1902, defendants Sanborn and one J. G. Riley with full notice and knowledge of plaintiff's rights in the premises and with actual and constructive notice and knowledge of the dedication of said railway reservation to public use for railway purposes only, entered into an agreement and a conspiracy to have that part of said reservation lying and being situated directly between plaintiff's said lot and the said line of railroad and on the way between plaintiff's house and said depot, used for restaurant and hotel purposes so as to intercept public travel and public patronage coming from such depots on their way to and along by plaintiff's house, and in pursuance of such agreement and conspiracy, said Sanborn wrongfully and with the intent to injure plaintiff and depreciate the value of his said property, leased and rented to said Riley the right to place and maintain, and said Riley did about said time place and ever since has maintained, on said reservation what is known as the Riley Restaurant, to plaintiff's great damage; that thereafter on about December 27, 1902, said Sanborn entered into a further conspiracy with F. W. Burger whereby it was agreed by and between them that Sanborn would convey to said Burger a portion of said reservation lying immediately north of said First Street and adjoining thereto and on a direct line between plaintiff's said premises and said line of railroad, and also should convey to him a certain old wooden hotel building, and that said Burger would place the same on that part of said reservation so to be conveyed; and that said Sanborn did convey said land and old building to Burger knowing and intending that he would use the same to the detriment of plaintiff; and that Burger with a like knowledge so bought and used said premises; and that Burger proceeded to remove the said wooden hotel building to said railway reservation, placing the same thereon so that it extended partly over on the north side of said First Street, about forty feet or less from the most northern line of plaintiff's lot, in a position so that his said house is on a line between plaintiff's property and said railroad; that said Burger transfered said hotel or rooming house to defendants R. S. and L. B. McIntosh who ever since have kept and now keep and maintain said house to plaintiff's great damage; that the defendants Amzie Baker, R. S. and L. B. McIntosh and their vendors Riley and Burger, have maintained and kept the respective buildings

well knowing plaintiff's rights in the premises and for the purpose of intercepting custom coming to his house, and with the intent and purpose of injuring him and depriving him of a valuable right acquired by the purchase of his said property; that in consequence the defendants have rendered plaintiff's property less desirable and less valuable for either residence, business or hotel purposes; that plaintiff and each of his vendors, Thompson and McAllister, bought such property with reference to said maps and dedication, and under representations to them made at and prior to the time they respectively purchased, that said lot was on the corner next to the railroad and that there could and would be no other house between said lot and the railroad, and that said railway reservation could and would be used for railway purposes only; so that he confidently expected and relied upon the idea that there could and would be no such structures between his said property, as is herein complained of, to intercept his trade, endanger his premises and render less valuable his property; that he has sustained damages in the sum of $1,500; that if said houses are permitted to remain the injuries will be perpetual and continuous in their nature, and not susceptible of calculation and his damages will be permanent and irreparable; wherefore he alleges that he and the public generally, on behalf of whom he seeks to maintain this suit, have a permanent easement in and to said railway reservation, and a right to have the same used for railway purposes only, and to have and recover of and from defendants his damages already sustained and the said structures abated as a nuisance, and his rights of use appurtenant to his property restored to him, and judgment requiring defendants to remove said buildings and houses from said reservation, etc.

Upon various objections, the court excluded nearly all the testimony offered by appellant in support of the allegations of his petition and finally instructed a verdict in favor of the defendants.

The appellant offered to introduce in evidence maps and plats of the Glidden and Sanborn and the Holland Additions to Amarillo; also the record chain of title to lot 1 in block 2 in the Glidden and Sanborn Addition from the State down to himself; he also offered to prove by the deed records of Potter County that in every deed made since the filing of the map of the Glidden and Sandborn and Holland Additions, conveying land therein, reference was made to such respective maps as being of record in the office of the county clerk of Potter County; and by appellee Sandborn that he and Glidden owned all the Glidden and Sanborn Addition when it was platted and the map thereof filed, and that he owned all parts thereof not previously sold and conveyed at the time he executed the deed of conveyance to Bush on February 5, 1898; and by the witness McAllister that he bought and owned at one time lot No. 1 in block 2; and by himself that he bought and became the owner of lot 1 in block 2 on March 5, 1901, when he took up his residence and continued to reside thereon till the filing of this suit, and further by the witness McAllister that the placing and maintaining the McIntosh hotel and Riley restaurant on the strip of land north of lot 1 in block 2 had the effect of depreciating the value and use of lot 1. All this evidence was excluded by the court upon objections of appellees. But all the evidence is so obviously admissi-

ble under appellant's allegations, if his petition shows a case entitling him to recover, that we deem it unnecessary to discuss seriatim the various questions presented. Indeed, appellees do not seek specifically to justify the court's ruling with respect to the exclusion of the evidence except by such counter propositions of law as go to show that appellant's petition states no cause of action. The gist of their contention is that there it no such thing known to the law as dedication of real estate to the public for railway purposes, and that therefore appellant has alleged no such interest in the strip of land adjacent to his lot designated on the maps as "Reserved for Railway Purposes" as will entitle him to recover in this case. So that, in effect we are confronted with the sole question of whether or not appellant's petition states a cause of action. That it does we entertain no doubt.

It is not a controversy between Sanborn as the owner of the fee of this reservation and some railway company claiming under the supposed dedication, but is simply a question of whether or not appellant who has purchased under the circumstances alleged, is entitled to have such reservation used for nothing other than railway purposes as an appurtenant to and incident of his ownership of lot 1. It is well settled that where a proprietor of a town or city lays out and plats the squares, lots, streets, alleys, etc., and causes the same to be recorded in the county clerk's office, and sells lots in accordance with such plat, he thereby dedicates the streets and alleys to the public and can not revoke the grant when the public acquires an easement. Oswald v. Grenet, 22 Texas, 101; Preston v. Navasota, 34 Texas, 684; Wolf v. Brass, 72 Texas, 133; Parisa v. City of Dallas, 83 Texas, 257. We do not understand appellees to controvert this proposition, but their contention is that the dedication in this instance being to a private corporation, no one acquired any rights thereby, since a dedication can only be made to the public use. But this precise question seems to have been considered by our Supreme Court in Harrison v. Boring, 44 Texas, 255. The facts of that case, so far as pertinent, will sufficiently appear from the following quotation from the opinion written by Chief Justice Roberts:

"The important question is: Was the space occupied on the plat of said town by lot 6 reserved from sale and permanently set apart as a space to be kept for depot purposes, upon the faith of which lots adjoining thereto (one of which was No. 7) were purchased and built upon, by which an easement was attached to said lot No. 7, entitling its owner or owners to a servitude on lot 6 as an open space, or to be afterwards appropriated alone to depot purposes, and not to private use, as attempted by the defendants, Boring & Kenard, in building a business house upon it adjoining that part of lot No. 7 owned by plaintiffs?

"This ground of action is distinctly and plainly set out in the supplemental petition. The charge of the court fails entirely to convey to the jury any distinct idea of it, but continually, in any reference made to it, blends with it a dedication to the public, leaving the jury to understand that lot 6 must have been dedicated to public use, in contradistinction to a reservation from sale for depot purposes to have invested the purchasers of lot 7 with any rights upon it. It would have amounted to the same thing, substantially, if the court had charged the jury

that the plaintiffs could claim no right on lot No. 6 by reason of being the owners of part of lot No. 7, unless lot No. 6 had been dedicated to the public when the lots were sold. The charge went further than merely producing confusion in this regard by adding, as follows, to wit: 'But if the reservation or dedication was for the railroad company, or for the benefit of the railroad company, it was no dedication to the public, nor was it for the benefit of the public, for in that event it would be the railroad company interested in such dedication, and not the public.'

"There was no inconsistency in the right of easement of plaintiff and the appropriation of lot 6 by the company for depot purposes. Both might exist and the company have the fee of the land and the control of the space left for depot purposes, and still plaintiffs might have a right of servitude upon lot 6 so far as it was consistent with its use for depot purposes, by virtue of his right of easement attaching and pertaining to lot 7, by the terms of its sale originally, upon the faith of which the purchasers and those holding under them had invested their means in the purchase and in erecting valuable improvements in reference thereto."

The case is very much in point here. It is not so much a question of dedication of this four hundred foot strip of land to the public to be used for railroad purposes, as it is a question of covenant or promise upon the part of the grantors that such strip shall be used exclusively for railway purposes, whereby the purchaser acquired as appurtenant to his purchase the right that it should be used for this purpose alone. As said in Lamar Co. v. Clements, 49 Texas, 347: "If the owner of land indicates by the map, or by other unequivocal acts or declarations, that a particular lot or square is to be reserved or applied to a particular or specific use of a quasi-public character, and such as to induce purchasers of contiguous or neighboring lots to give a higher price than they otherwise would, the use to which such lot was to be appropriated would no doubt be a reservation, and not, strictly speaking, a dedication to public use. But, nevertheless, the difference, so far as the owners of lots purchased on the faith of such reservation are concerned, is merely nominal; for the owner of the property who thus sells it is estopped from appropriating the lots or square so reserved to a purpose inconsistent with that for which it was reserved; or he will be held to have by such sale created a servitude in the property reserved, in favor of the dominant estate which he has conveyed, which will prevent his applying the reserved property to any other use than that for which it was reserved."

These principles should control the disposition of this case. The allegations are broad enough to show, if that be necessary, that the use for which the reservation was here made was of a quasi-public character. While a railway corporation is a private corporation, yet it is by law made a common carrier of passengers and freight and the public have the right to go upon its premises for the purpose of transacting business with it in its capacity as a common carrier, and such use of its premises has a broader foundation and a more substantial right than a mere license by the company, but at least is quasi-public in its nature.

For the error of the court in excluding the evidence offered by appellant in support of his allegations, the judgment is reversed and the cause remanded for another trial.

*Reversed and remanded.*