McBRIDE v. ROCKWALL COUNTY.
(No. 7890.)

(Court of Civil Appeals of Texas. Dallas. May 26, 1917. Rehearing Denied June 16, 1917.)

DEDICATION ⟨⟩61—PUBLIC SQUARES—ABATEMENT OF NUISANCES.

A public square was donated to a city "for the use of the public." Later a county courthouse was constructed thereon and maintained with water-closets which it became desirable to change. The commissioner contracted to have constructed a one-story brick building 18x20 on the square for storing the county's fuel and for water-closets. Petitioner, who owned buildings immediately adjoining the square, sought to restrain the construction of the building. Held, that the injunction should have been granted, as the proposed building was inconsistent with the use for which the square was dedicated, as acquiescence of the public in the unauthorized use of the square for a courthouse would not serve as basis for an extension of such use on the ground that such extension would facilitate the first unauthorized use.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 116, 120.]

Appeal from District Court, Rockwall County; Kenneth Foree, Judge.

Suit by H. M. McBride against Rockwall County. From a decree dissolving an injunction, plaintiff appeals. Reversed and remanded, with instructions.

T. B. Ridgell, of Rockwall, for appellant. D. T. Bowles, of Rockwall, and L. A. Clark, of Greenville, for appellee.

RASBURY, J. This is an appeal from the decree of the trial court dissolving an injunction temporarily restraining appellee from erecting a brick building then under construction upon the public square in the town of Rockwall. The original decree granting the temporary injunction was made in vacation on ex parte hearing.

On final trial the following undisputed facts were developed: The public square, which is the approximate center of the town, is 200 feet square, and was donated, with the streets surrounding it, in 1854 by Elijah Elgin to the town "for the use of

the public" forever. At the time of the donation what is now Rockwall county was unorganized. After the organization of the county the county courthouse was erected upon the square, where it has since remained. In the year 1910, by agreement of the county and city authorities, and for the purpose of improving sanitary conditions, the county constructed and has since maintained six water-closets and one urinal in the courthouse, connected with water and sewer pipes extending from the courthouse to the concrete retaining walls inclosing the square, at which point they connect with the water and sewer pipes of the city, and the city has furnished free the water necessary to operate the system so installed by the county. Since installation of the system, the men's water-closet has been maintained on the second floor of the courthouse. Due to overflows and consequent objectionable conditions and injury to the courthouse, it became necessary to make some change. As a consequence the county commissioners entered into a contract with C. Shuman for the construction of a one-story brick building 18x20 feet at the northwest corner of the square, upon which work had started when the injunction was granted. One portion of the structure was to be used for storing the county's fuel coal and one portion for men's water-closets in lieu of the one in the courthouse, and was to be constructed in accordance with the best and most approved sanitary arrangements. Consideration of other plans for remedying the condition was before the commissioners' court, among them, the building of a basement, which was not adopted because of its prohibitive cost, approximately $7,000; also the plan of placing the men's water-closet at another place in the courthouse building, which was not done because it was believed the space would soon be required for other purposes. The public square is inclosed by concrete retaining walls rising 2 or 3 feet above the level of the street and filled in with soil, which constitutes the courthouse lawn and on which are shade trees. In addition to the use of the square as a courthouse site, it is also used by the public as assembling and picnic grounds. Appellant owns four brick buildings of the aggregate value of $8,000, immediately west of the square and the proposed building, separated therefrom by Goliad street 110 feet wide. This property, in the opinion of appellant and other witnesses, will be depreciated in value by the erection of the proposed building.

The foregoing are the facts disclosed by the record. There is in the record other testimony which is without force on the issues presented on appeal, since it consists of the opinions of various citizens of Rockwall to the effect that the proposed building will be unsightly, and that the constant use of the water-closets by the public will produce foul and offensive odors, such as to offend the sensibilities of the citizens who use the lawn as a meeting or assembling place and for picnic grounds.

The controlling issue in the case is the contention of appellants that the building proposed to be erected upon the square is inconsistent with the use to which the square was dedicated and is an obstruction thereof, which may be abated as a nuisance. Under the decisions of the appellate courts of this state on similar questions we conclude the contention should be sustained. The leading case is City of Llano v. Llano County, 5 Tex. Civ. App. 132, 23 S. W. 1008. The facts in that case disclose that the town square was dedicated by Llano county to the public use, and as a site for a courthouse. The county authorities erected thereon a jail and cesspool, which was held to be inconsistent with the dedication and an encroachment upon and an obstruction of the square in the nature of purprestures and subject to abatement as nuisances. The rule was said to be that a dedication made for the public use must be considered with reference to the purpose for which it was originally intended. In observing that rule the court, in effect, held in that case that the only right reserved by the dedicator in the square was to use same as a site for a courthouse, and the use of it for any purpose not in keeping with the original purpose, or tending to facilitate its public use as a square as squares are generally used by the public, would be an invasion of the rights of the public. That only when that right is reserved by the dedicator may a town square dedicated to the public use be appropriated for public buildings, and that squares are in a class with public highways which the public is entitled to enjoy in the usual way free of encroachment or obstruction. In substance, similar rules are announced in Clements v. City of Paris, 154 S. W. 625; Id. (Sup.) 175 S. W. 672. In the case last cited the Supreme Court in upholding the Court of Civil Appeals in its holding that a comfort station could not be erected upon an abandoned courthouse square, in effect, declares that the use which squares may be put to when dedicated to the public use without reservation is as a place of public resort, etc. In the present controversy, as we have shown, the dedication was "to and for the public use" without reservation. An application of the rules announced in the cases cited precludes the use of the square for any purpose other than that for which town squares are generally used, which in the case last cited is said to be a mart or public meeting place. Any use which would facilitate the purpose of the dedication as conveniences and comforts would, of course, not be precluded. But it is urged that the courthouse is upon the square, and the right to maintain it there is unquestioned, from which it is argued that the proposed building is authorized since it facilitates the use of

the courthouse. We believe both statements of fact may be conceded, but the legal conclusion may not. By the dedication there never was reserved to the county specifically the right to use same as a site for a courthouse. What is now Rockwall county was at the time of the dedication of the square a part of Kaufman county, and hence, waiving for the time the point that such right would have to be specifically reserved, it cannot be consistently claimed that the dedicator even contemplated such a use at the time he dedicated the square. We understand, however, from the cases cited, that squares so dedicated cannot be used for public buildings, save in cases specifically reserving such right. Then can the acquiescence of the public in the unauthorized use of the square for one purpose serve as basis for an extension of such use on the ground that such extension would facilitate the first unauthorized use.

"Acquiescence is a branch of the law of estoppel and is used to defeat a party's action on the principle of equitable estoppel; that is, it must appear that, because of something that was done, or because nothing was done, the party invoking the estoppel will sustain loss unless it is allowed." 1 C. J. 906.

By such rule it may be that the acquiescence of the public in the erection of the courthouse on the square would estop it of any right to abate such use because of the loss to the county. Asquiescence in a particular unauthorized use, however, would not, in our opinion, conclude the public on an attempted extension of the unauthorized use in which it does not acquiesce and against which it is protesting.

Entertaining the views we do in reference to the issue discussed, all other issues become immaterial, and for that reason will not be discussed.

The judgment of the trial court is reversed, and the cause remanded, with instructions that proper orders be made perpetually enjoining appellee from erecting the proposed building on the public square.