## GULF SULPHUR CO. v. RYMAN et al. (No. 7680.)

(Court of Civil Appeals of Texas. Galveston. Feb. 4, 1920.)

**1. Boundaries ⊙==33—Extent of fee in easement reserved, stated.**

When a deed, by reference to a plat or by descriptive calls, shows that the land conveyed is bounded by a strip of land dedicated or reserved as a private or public right of way or easement, in the absence of express provisions, it is presumed that it was the grantor's intention to convey to grantee the fee to the easement strip as far as the grantor's title extended therein, provided it did not extend beyond the strip, in which case the deed only conveys title to the center thereof.

**2. Carriers ⊙==4—Easements ⊙==52—Right of way for pipe line reserved in deed may be used for public lines; "common carrier."**

Where an owner of land subdivides it, and reserves or dedicates a strip of land to be used as a right of way for pipe lines, and there is nothing in the deed restricting its use to private pipe lines, such right of way may be used as such by any person or corporation operating a public pipe line, such corporations being common carriers and having the right of eminent domain.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Common Carrier.]

**3. Easements ⊙==55—Purchasers of dominant estate entitled to have pipe line right of way restricted to use for pipe line.**

Where an owner of land subdivided it, and reserved in the deed a right of way for a pipe line, the right to have the use of such strip of land restricted to the purposes for which it was dedicated is a valuable one to the abutting owners, and such right passes to the purchasers of the lots, regardless of whether the fee to the strip be conveyed by their deeds.

**4. Dedication ⊙==61—Abutting owners may enjoin use of dedicated property other than that for which dedicated.**

Abutting property owners may enjoin the use of land dedicated to a public purpose for any other than the purpose for which it was dedicated.

**5. Easements ⊙==57—Owner of land abutting on private easement purchased on faith that easement was permanent can have easement kept open.**

An owner of land abutting on a private easement, who has purchased on the faith that the reservation was permanent, is entitled to have the easement kept open.

6. Easements ⊜⇒55, 61(3)—Grantor of land reserving easement for pipe line may be enjoined from drilling oil wells thereon.

Where an owner of land has subdivided it and sold according to a plat showing a strip of land reserved for a pipe line, and such reservations are made in the deeds, such owner cannot thereafter drill for oil within such strip, regardless of whether the fee is in him or not, and when he does so an injunction will lie.

Appeal from District Court, Matagorda County; Sam'l J. Styles, Judge.

Suit by the Gulf Sulphur Company against Nancy J. Ryman and others. Decree for defendants, and plaintiff appeals. Reversed and rendered.

Gaines & Corbett, of Bay City, and Gill, Jones, Tyler & Potter, of Houston, for appellant.

Krause & Wilson, of Bay City, for appellees.

PLEASANTS, C. J. This is a suit for the recovery of land and for injunction brought by appellant against appellees Nancy J. Ryman, B. A. Ryman, and John Knox. The defendants demurred generally to plaintiffs' petition, and disclaimed as to all of the land sued for except a certain portion thereof described in their answers, as to which they pleaded not guilty. They also denied generally all of the allegations of the petition.

The following are the undisputed facts disclosed by the record:

On July 22, 1901, Nancy J. Ryman, wife of B. A. Ryman, being the then owner of a certain tract of land out of the William Simpson league in Matagorda county, Tex., containing 102.3 acres, had the same surveyed and subdivided for the purpose of sale, and caused a plat of same to be placed of record. This plat shows that a strip of land along the east line of said lots, and also the north line of said tier of lots, was reserved for a pipe line and so designated. Thereafter the Rymans sold all of said lots, and each of the deeds of conveyance referred to the plat, and contained the following clause:

"And be it understood that in subdividing said tract of 102.3 acres into 24 tracts of various acreages, grantors hereof reserved a right of way for pipe line bordering each and every tract of said subdivision, as will be shown by said plat."

The Gulf Sulphur Company acquired lots 11, 12, 13, 14, 15, 16, 17, N. ½ of 19, all of 20, of Ryman's subdivision, lying west of said pipe line strip, out of said subdivision, through mesne conveyances, none of which subsequent conveyances contained the reservation, but which were unqualified; and the said Gulf Sulphur Company also acquired from others lots 71, 87, and N. ½ of 90, Cash & Maye's subdivision, out of the Cash & Maye's subdivision bordering the east line of said pipe line strip, and has held said property under deeds duly registered, through itself and its vendors, for more than 10 years; said Rymans having sold the lots in said Ryman subdivision more than 10 years ago.

At the time said map was executed and recorded, and the lots owned by plaintiff were conveyed by the Rymans, they owned none of the land adjoining said pipe line strip on the east.

On the 20th day of June, 1917, Nancy J. Ryman, joined by her husband, B. A. Ryman leased the strip of land designated "pipe line" on the map above mentioned, to their codefendant, John G. Knox, who took possession of the strip, and was holding and undertaking to develop same for oil by boring wells thereon at the time this suit was brought.

The land described in the petition includes this strip, and defendants disclaimed as to all of the land except said "pipe line" strip.

As ground for injunction the plaintiff alleges that the defendants were boring for oil, gas, and other minerals, and had developed salt water, slightly mingled with oil; that underlying the plaintiffs' property, and in the vicinity of the wells being drilled by the said Knox under authority from the said Rymans, there was a deposit or strata of sulphur of extensive area and varying thickness, and of great value; that the boring for oil in territory to be mined for sulphur is a menace to the latter, rendering it impossible to properly mine the sulphur, and threatening imminent and irreparable injury.

The trial in the court below without a jury resulted in a judgment in favor of the plaintiff for all of the land except the pipe line strip, and in favor of defendants for said strip, and denying plaintiff's prayer for injunction.

Under appropriate assignments of error the appellant assails the judgment on the ground that the undisputed evidence shows that appellant is the owner in fee of all of the land in controversy, and the court should have so adjudged; and that the only right shown in appellee to the "pipe line" strip being the right to use the same for the purpose of a pipe line right of way, the trial court should have enjoined its occupancy and use by them for any other purpose. Appellant further contends that if it is not the owner of the fee in the pipe line strip, said strip having been dedicated and set apart by the appellees Ryman for a pipe line right of way and the adjoining lands now owned by appellant having been sold by said appellees after such dedication by them of said strip, and the deeds conveying same containing the reservation before set out and referring to the recorded map, said dedication and reservation amounts to an express covenant

with each and every purchaser of a lot shown on said map and adjoining said strip that the strip would never be used for any purpose other than a pipe line right of way, which covenant runs with the title to the lots as an appurtenance thereto, and appellant, as the owner of the dominant estate, is entitled to have appellees enjoined from using the subservient estate for any purpose other than that for which it was dedicated or some purpose incident thereto and not inconsistent therewith.

We think each of these contentions of appellant is sound and well sustained by the authorities.

[1] When a deed of conveyance of land by reference to a plat or map or by descriptive calls shows that the land conveyed is bounded by a strip of land dedicated or reserved as a private or public right of way or easement, in the absence of some express contrary provision in the deed it is presumed that it was the intention of the grantor to convey to the grantee the fee to the easement strip as far as the title of the grantor extends therein, provided it does not extend beyond the strip, in which case the deed only conveys title to the center of the strip.

In 2d Edition Devlin on Deeds the text is as follows:

Paragraph 1024:

"Unless the deed manifests an intention on the part of the grantor to limit the boundary line, the line, when the land is bounded by a nonnavigable stream or highway, extends to the center of such stream or highway, if the grantor is the owner of the fee. Hence, where a deed describes the land conveyed as extending 500 feet to a street or avenue, and thence at right angles along the street 120 feet to the place of beginning, the fee of the land to the center of the street is conveyed subject to the public easement, notwithstanding the line of 500 feet extends only to the side of the street and not to its center. * * *"

Paragraph 1027:

"If the land conveyed is bounded by an alley, the alley, when closed, reverts to the owners adjoining."

Paragraph 1028a:

"The natural presumption where a deed conveys land bordering on a stream or highway is that the grantor means to convey what he owns, and not to reserve a strip of land of no value to him, but the loss of which to the grantee might be productive of great injury. He has power by apt words to reserve what and as much as he pleases, or so to frame the language of his conveyance as to limit the land conveyed to the line of the stream or highway, without extending further, and in all such cases courts are bound to give effect to his expressed intention. But, in the absence of words showing such an intention, it is not presumed that the grantor intended to retain in himself the fee to the street or stream when he has parted with the adjoining land. Therefore it may be said to be a universal rule that a deed giving a stream as a boundary will convey title to the center of the stream or to low or high water mark, depending upon how far the grantor's title extends. By such a description the grantor will convey all that he owns, unless a contrary intent appears from the language of the deed. The deed is taken most strongly against the grantor in the application of this rule, and courts will not favor the presumption that he has retained title to the bed of the stream."

When a deed conveys land described as bordering on a street or highway, if there is no evidence showing upon whose land the street or highway was laid out, the presumption is that the landowners on either side each gave one-half of the highway, and the title conveyed by the deed would only extend to the center of the street or highway; but if it be shown that the easement was laid entirely upon land owned by the grantor, the deed would pass title to the whole of the easement, unless grantor owned adjoining lands on the opposite side of the highway or easement. If the grantor at the time owns the easement or highway is dedicated owns the land on both sides there could be no presumption that in selling the land bordering on the highway on one side he intended to convey the title to more than one-half of the highway. These rules for construction of deeds are discussed and clearly stated in the case of In re Robbins, 34 Minn. 99, 24 N. W. 356, 57 Am. Rep. 40. In that case the court says:

"The question here presented is whether, where a street or alley is laid wholly on one's own land, and is located on the margin of his tract, so that he owns nothing beyond (the adjoining proprietor having no interest in the fee of such street or alley), the whole of the street opposite a lot designated as such in a deed, and bounded on the street, passes to a grantee of the original proprietor. Where, by the terms of a deed, the land conveyed is bounded by a street or highway, the grantee takes presumptively ad filum viæ as the natural boundary line between opposite proprietors; the reason of the rule being that the adjoining owners are presumed to have originally furnished the land in equal proportions for the sole purpose of a highway. Dunham v. Williams, 37 N. Y. 251; Stiles v. Curtis, 4 Day [Conn.] 333; Woolr. Ways, *5. So a deed of lots conveyed as represented in a town plat is presumed to include a grant of the soil to the center of the street, and it passes as parcel of the land and not as an appurtenant. Bissell v. Railroad Co., 23 N. Y. 64. This presumption, however, yields when a different intention is clearly manifested, or when the evidence shows there could be no foundation for it, as where the grantor at the time owned no part of the street, the same being laid wholly on the land of another. Dunham v. Williams, supra; Kings Co. Ins. Co. v. Stevens, 87 N. Y. 293, 294 [41 Am. Rep. 361]; 3 Kent, Comm. *434; Champlin v. Pendleton, 13 Conn. 27; Watrous v. Southworth, 5 Conn. 304–309; Peck v. Smith, 1 Conn. 146 [6 Am. Dec. 216].

"In arriving at a proper construction of the effect of a deed granting lots bounded on a street,

and the intention of the parties thereto in respect to the extent of the grant in the street, regard must be had to the situation of the lots and streets and the state of the title as well as the language of the deed. 'This is the recognized rule of interpretation, and it is a question of interpretation and intent.' Mott v. Mott, 68 N. Y. 253; Bliss v. Johnson, 73 N. Y. 532; Webber v. Railroad Co., 2 Metc. [Mass.] 151. Ordinarily the ownership of the soil of the street is of no practical use to the grantors of abutting lots, and accordingly there is usually no purpose to be served in the retention by them of narrow strips or gores of land between the land conveyed and that of other proprietors; while for many purposes such ownership is of special importance to the purchaser, because the owner of the fee of the highway is entitled to the proprietary and beneficial use thereof, subject only to the public easement, and may maintain trespass for an injury to, or the exclusive appropriation of, the soil, or other acts done on the land not necessary to the enjoyment of easement. Peck v. Smith, 1 Conn. 145 [6 Am. Dec. 216]. It is presumed, therefore, that a grantor's land in a street passes under the general description in his deed of the adjoining land with which it is connected, or to which it belongs, as being part of the same tract, subject to the public easement. Berridge v. Ward, 10 C. B. (N. S.) 400; Bissell v. Railroad Co., 23 N. Y. 64.

"Applying these principles to an exceptional class of cases like the present, and we think it must follow that the entire street abutting the lots in question belonged to and passed with them under the general description in the deed of the original proprietor. Taylor v. Armstrong, 24 Ark. 107. It does not differ from the case of an alley laid off by the original proprietor from the rear portion of a tier of lots next adjoining an adjacent proprietor. Subsequent purchasers of lots take the whole alley as part of the grant, the original owner retaining no portion of the fee."

[2] It can make no difference in the application of the rules established by authorities that the easement is a private rather than a public right of way. This was held by this court in the case of Amerman v. Ry. Co., 182 S. W. 54. We do not think, however, that the easement in controversy can be regarded as a mere private right of way. The purpose for which the dedication was made was a public purpose, there being nothing in the deed restricting its use for such purpose to private pipe lines, the right of way can be used as such by any person or corporation operating a public pipe line, and such corporations are now common carriers under our statute and given the right of eminent domain.

[3] It goes without saying that the right to have the use of this strip of land restricted to the purposes for which it was dedicated is a valuable right to the owners of the abutting lots, and greatly enhances the value of such lots, and this right clearly passed to the purchasers of the lots, regardless of whether the fee to the strip was conveyed by their deeds.

[4] The right of abutting property owners to enjoin the use of land dedicated to a public purpose for any other than the purpose for which it was dedicated is sustained by the following cases decided by our own appellate courts: Corsicana v. Zorn, 97 Tex. 323, 78 S. W. 924; County of Harris v. Taylor & Gabel, 58 Tex. 690; Seguin v. Ireland, 58 Tex. 183; City of Llano v. Llano County, 5 Tex. Civ. App. 132, 23 S. W. 1008; O'Neal v. City of Sherman, 77 Tex. 182, 14 S. W. 31, 19 Am. St. Rep. 743; Sanborn v. City of Amarillo, 42 Tex. Civ. App. 115, 93 S. W. 473; Clements v. City of Paris, 107 Tex. 200, 175 S. W. 672; McBride v. Rockwall County, 195 S. W. 926.

[5] The right of the owner of land abutting on a private easement, who had purchased upon the faith that the reservation of the same was permanent, to have the easement kept open, is equally well settled by our decisions.

In the case of Harrison v. Boring, 44 Tex. 255, the plaintiff, who was the owner of lot 7 as designated on a town plat, sought to prevent the use of lot 6 on said plat from other than depot purposes. In discussing the questions presented by the appeal our Supreme Court, speaking through Justice Roberts, says:

"The important question is, Was the space occupied on the plat of said town by lot 6 reserved from sale and permanently set apart as a space to be kept for depot purposes, upon the faith of which lots adjoining thereto (one of which was No. 7) were purchased and built upon, by which an easement was attached to said lot No. 7, entitling its owner or owners to a servitude on lot 6 as an open space, or to be afterwards appropriated alone to depot purposes, and not to private use, as attempted by the defendants, Boring & Kenard, in building a business house upon it adjoining that part of lot No. 7 owned by plaintiffs? * * *

"There was no inconsistency in the right of easement of plaintiffs and the appropriation of lot 6 by the company for depot purposes. Both might exist, and the company have the fee of the land and the control of the space left for depot purposes, and still plaintiffs might have a right of servitude upon lot 6, so far as it was consistent with its use for depot purposes, by virtue of his right of easement attaching and pertaining to lot 7, by the terms of its sale originally, upon the faith of which the purchasers and those holding under them had invested their means in the purchase and in erecting valuable improvements in reference thereto.

" 'An easement is a liberty, privilege, or advantage in land without profit, existing distinct from the ownership of the soil.' Herman on Estoppels, § 517; 3 Kent's Comm. 565.

" 'Rights of accommodation in another's land, as distinguished from those that are profitable, are properly called easements.' Wash. on Eas. and Serv. 3.

" 'The essential qualities of easements are these: First, they are incorporeal; second, they are imposed on corporeal property and not upon the owner thereof; third, they confer no right to a participation in the profits arising from such property; fourth, they are imposed

for the benefit of corporeal property; and, fifth, there must be two distinct tenements—the dominant, to which the right belongs, and the servient, upon which the obligation rests.'. Wash. on Eas. and Serv. 3. Servitude is the burden imposed on one tract of land for the benefit of another tract, to be enjoyed thereon as an advantage, liberty, or privilege to the owner of the latter tract. Wash. on Eas. and Serv. 5, 276.

"By virtue of such a right the proprietor of the estate charged is bound to permit or not to do certain acts in relation to his estate for the utility or accommodation of a third person, or of the possessor of an adjoining estate. 3 Kent's Comm. 535, 536.

"Servitudes or easements must be created by the owner. 3 Kent's Comm. 537. * * *

" 'While the uses and purposes for which a proper dedication may be made are public in their nature, such as ways, landing places, public parks, commons, pleasure grounds, cemeteries, churches, courthouses, and the like, and to constitute a technical dedication it must be to the public for a public use, there is a somewhat numerous class of cases where the subject-matter is a way or an open area, like a public square, and an act has been done by the owner which creates for individuals rights therein in most or all respects like those which they would have by a proper technical dedication, while the easement is a private and not a public one.' Wash. on Eas. and Serv. 220.

"As where lots are sold on a street as represented by a map, private easement on the strip of land may be acquired by the purchasers of the lots, though it never becomes a public street. Bissell v. N. Y. Cent. R. R. Co., 23 N. Y. 61; Same v. Same, 26 Barb. (N. Y.) 63. The map operated in such case as a representation which was acted on.

"Where, also, the owner of a block of land sold off lots to divers persons, representing to each one separately in selling that a strip of eight feet front on the lots was to be left open, though no such reservation was made in. the several deeds, and houses were built back of and leaving open' said strip in front in pursuance of said representation, equity, at the instance of those who had so built, enjoined and restrained a purchaser of one of the lots who had commenced to build on the reserved strip. Although there was no agreement that constituted a legal obligation, the representation that such was to be the plan of building on said block, made to each one in the sale of the lots, and acted on by some of them who had built in accordance with it, and upon the faith of its observance by the rest conferred upon those who had thus built an easement upon each of their lots in reference to the said strip fronting on all of the said lots that a court of equity would recognize and enforce as a substantial right. Tallmadge v. East River Bank, 26 N. Y. Rep. 105. See other cases of same class in Wash. on Eas. and Serv. 97–106.

"The equitable doctrine of estoppel, founded on representations and conduct acted on by others, is quoted from an English authority by Bigelow, as follows, to wit: 'If any person, by a course of conduct, or by actual expressions, so conducts himself that another may reasonably infer the existence of an agreement or license, whether the party intends that he should do so or not, it has the effect that the party using that language or who has so conducted himself cannot afterwards gainsay the reasonable inference to be drawn from his words or conduct.' Bigelow on Estop. 556.".

[6] Applying these principles to the instant case, we think it clear that appellant, regardless whether it acquired by its deeds from and under the Rymans the title to the fee in the pipe line strip, has the right to enjoin the use of said strip for other than pipe line purposes.

The holding in the Harrison-Boring Case has been followed in a number of cases in this state, among which are: Lamar County v. Clements, 49 Tex. 357; Temple v. Sanborn, 41 Tex. Civ. App. 65, 91 S. W. 1095.

We think the authorities cited clearly establish appellant's title to the strip in controversy, subject to the right of appellees and other owners of lots abutting thereon to use same as a pipe line right of way, and that appellees' use of said strip for any other purpose is unauthorized and wrongful and should be enjoined.

It follows from these conclusions that the judgment of the court below should be reversed, and judgment here rendered for appellant for the title to said strip, subject to the easement aforesaid, and enjoining appellees from the use of the strip except as a pipe line right of way, and it has been so ordered.

Reversed and rendered.