## TEXAS & P. RY. CO. v. CHANDLER et al. (No. 598.)

Court of Civil Appeals of Texas. Eastland. Sept. 20, 1929.

Rehearing Denied Oct. 18, 1929.

Thomas J. Freeman, of New Orleans, La., and Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellant.

A. H. Kirby, of Fort Worth, and Davidson, Doss & McMahon and Dallas Scarborough, all of Abilene, for appellees.

HICKMAN, C. J. A statement of the nature and results of the suit can best be understood following a brief statement of the facts. On and prior to March 7th, 1881, the appellant was the owner in fee simple of a large tract of land upon which is now situated the city of Abilene. On the date named it filed for record with the county clerk of Taylor county a plat duly certified to by William H. Abrams, its land commissioner, by which plat a portion of the land owned by it was divided into blocks, lots, streets, and alleys. The streets were all named, and the blocks and lots numbered. Through the center of this plat, running east and west, was an unplatted strip of land, across which were written these words, "Reserved for railway purposes." This strip was abutted on the north by North First street and on the south by South First street. The lots facing some of the streets were double the width of those facing other streets, indicating the general scheme to have certain streets business streets and the others residence streets. All of the blocks facing south on North First street and north on South First street were divided into business lots.

On March 14, 1881, one week after the filing of the plat for record, an auction sale was conducted by appellant and a large number of lots, including some of the lots owned by appellees, were sold to various purchasers. The deeds executed and delivered by appellant for the lots thus sold described same by lot and block numbers "as laid down and described in the plat of the town of Abilene, according to the map of said town, a copy of which is on record in Book B, page 640, in said Record of Deeds for Taylor County." The granting portions of the deeds each contained this further language: "Together with all and singular the rights, members, privileges, hereditaments, and appurtenances to the same belonging, or in anywise appertaining." Thereafter, and on the 17th day of May, 1881, another map was filed by appellant with the county clerk of Taylor county, which latter map included the lands platted in the former and also additional lands, which were divided and laid off in blocks, lots, streets, and alleys. Since the platting of this land, Abilene has grown to be a city of more than 30,000 population. About one-half of the population reside south of the railroad and one-half north. The business district of the city is likewise divided; there being slightly more business on the north side than on the south side. South First street and North First street are important business and commercial streets. The width of the strip of land reserved for railway purposes in the business section of the city appears from the plat to be at least 300 feet. As stated, it is abutted on each side by a street. The distance, therefore, between the business houses facing north on South First street and south on North First street is more than 400 feet. This strip of land has been continuously used for railway purposes, there being situated thereon, besides the main tracks and side tracks, both a passenger and freight depot.

Prior to the filing of the instant suit appellant procured a purchaser for a portion of the strip of land which it had reserved for railroad purposes, the property after sale to be used for commercial purposes, but the sale was not consummated, because the appellees threatened injunction proceedings to prevent appellant from selling the same, claiming an easement in said property and the right to have same remain open or to be used only for railway purposes.

This suit was brought by appellant against all the owners of the lots abutting on South First street and North First street. The nature of the relief sought is to remove cloud from title by reason of the claims set up by appellees and for a permanent injunction restraining appellees from asserting any right, title, claim, interest, easement, or servitude in the strip of land above mentioned. The trial was before the court without the aid of

a jury, and resulted in a judgment establishing appellant's title to the land, subject, however, to the right of all of appellees to have said land used by appellant for railway purposes only, and denying appellant the right to sell or convey the same, except to be used for such purposes. From this judgment the railway company has perfected this appeal.

Both the facts and questions of law presented are very similar to those considered by this court in the recent case of Gulf Refining Co. v. Dishroon, 13 S.W.(2d) 230. In the opinion in that case we did not quote from the authorities there cited or discuss them at length. Since it is earnestly insisted by appellant that the instant case is distinguishable from the Dishroon Case and the cases therein cited, we have again made a careful study of the authorities, and deem it advisable to quote from a few of the Texas cases.

The general rule with reference to the rights acquired by the purchasers of lands with reference to a map or plat showing reservations of streets, parks, commons, etc., is quoted by our Supreme Court in Oswald v. Grenet, 22 Tex. 94, and City of Corsicana v. Zorn, 97 Tex. 317, 78 S. W. 924, 925, as follows:

"If the owner of land lays out and establishes a town, and makes and exhibits a plan of the town, with various plots of spare ground, such as streets, alleys, quays, etc., and sells the lots, with clear reference to that plan, the purchasers of the lots acquire, as appurtenant to their lots, every easement, privilege, and advantage which the plan represents as belonging to them, as part of the town, or to their owners, as citizens of the town. And the right thus passing to the purchasers is not the mere right that the purchaser may use these streets or other public places according to their appropriate purposes, but a right vests in the purchasers, that all persons whatever, as their occasions may require or invite, may so use them. In other words, the sale and conveyance of lots in the town, and according to its plan, imply a grant or covenant to the purchasers that the streets and other public places, indicated as such upon the plan, shall be forever open to the use of the public, free from all claim or interference of the proprietor inconsistent with such use."

That the same rule obtains with reference to land reserved for a quasi public purpose is determined in Harrison v. Boring, 44 Tex. 255, from which we quote:

"The important question is, Was the space occupied on the plat of said town by lot 6 reserved from sale and permanently set apart as a space to be kept for depot purposes, upon the faith of which lots adjoining thereto (one of which was No. 7) were purchased and built upon, by which an easement was attached to said lot No. 7, entitling its owner or owners to a servitude on lot 6 as an open space, or

382

to be afterwards appropriated alone to depot purposes, and not to private use, as attempted by the defendants, Boring & Kenard, in building a business house upon it adjoining that part of lot No. 7 owned by plaintiffs?

"This ground of action is distinctly and plainly set out in the supplemental petition. The charge of the court fails entirely to convey to the jury any distinct idea of it, but continually, in any reference made to it, blends with it a dedication to the public, leaving the jury to understand that lot 6 must have been dedicated to the public use, in contradistinction to a reservation from sale for depot purposes, to have invested the purchasers of lot 7 with any rights upon it. It would have amounted to the same thing, substantially, if the court had charged the jury that the plaintiffs could claim no right on lot No. 6 by reason of being the owners of part of lot No. 7, unless lot No. 6 had been dedicated to the public when the lots were sold. The charge went further than merely producing confusion in this regard by adding, as follows, to wit: 'But if the reservation or dedication was for the railroad company, or for the benefit of the railroad company, it was no dedication to the public, nor was it for the benefit of the public, for in that event it would be the railroad company interested in such dedication, and not the public.'

"There was no inconsistency in the right of easement of plaintiffs and the appropriation of lot 6 by the company for depot purposes. Both might exist, and the company have the fee of the land and the control of the space left for depot purposes, and still plaintiffs might have a right of servitude upon lot 6, so far as it was consistent with its use for depot purposes, by virtue of his right of easement attaching and pertaining to lot 7, by the terms of its sale originally, upon the faith of which the purchasers and those holding under them had invested their means in the purchase and in erecting valuable improvements in reference thereto."

In the case of Temple v. Sanborn, 41 Tex. Civ. App. 65, 91 S. W. 1095, 1098, a case very similar to the instant case, Justice Spear, after quoting the above, uses this language:

"The case is very much in point here. It is not so much a question of dedication of this 400 foot strip of land to the public to be used for railway purposes, as it is a question of covenant or promise upon the part of the grantors that such strip shall be used exclusively for railway purposes, whereby the purchaser acquired as appurtenant to his purchase the right that it should be used for this purpose alone."

In the case of Gulf Sulphur Co. v. Ryman (Tex. Civ. App.) 221 S. W. 310, 313, the original owner of a tract of land subdivided same and filed a plat of record, the plat showing a strip of land along the side of the platted tract upon which was a notation that same was reserved for a pipe line. All the adjoining lots were subsequently sold with reference to the plat, the Gulf Sulphur Company becoming the owner of certain of the abutting lots. The original owner of the subdivision later leased the strip to a party who began the sinking of oil wells thereon. The sulphur company brought an injunction, setting up, among other claims, that the strip had been restricted as to use by virtue of the plat and the sale of lots with reference thereto. In rendering a judgment for plaintiff, the Court of Civil Appeals at Galveston, speaking through Chief Justice Pleasants, uses this language:

"It goes without saying that the right to have the use of this strip of land restricted to the purposes for which it was dedicated is a valuable right to the owners of the abutting lots, and greatly enhances the value of such lots, and this right clearly passed to the purchasers of the lots, regardless of whether the fee to the strip was conveyed by their deeds.

"The right of abutting property owners to enjoin the use of land dedicated to a public purpose for any other than the purpose for which it was dedicated is sustained by the following cases decided by our own appellate courts: Corsicana v. Zorn, 97 Tex. 323, 78 S. W. 924; County of Harris v. Taylor & Gabel, 58 Tex. 690; Seguin v. Ireland, 58 Tex. 183; City of Llano v. Llano County, 5 Tex. Civ. App. 132, 23 S. W. 1008; O'Neal v. City of Sherman, 77 Tex. 182, 14 S. W. 31, 19 Am. St. Rep. 743; Sanborn v. City of Amarillo, 42 Tex. Civ. App. 115, 93 S. W. 473; [Clement] v. City of Paris, 107 Tex. 200, 175 S. W. 672; McBride v. Rockwall County [Tex. Civ. App.] 195 S. W. 926.

"The right of the owner of land abutting on a private easement, who had purchased upon the faith that the reservation of the same was permanent, to have the easement kept open, is equally well settled by our decisions."

From a consideration of these authorities, it will be observed that the question of dedication is closely allied, and perhaps somewhat confused with the question of restrictive covenants as to use. But, as observed by Justice Moore in Lamar County v. Clements, 49 Tex. 347, the difference between them, so far as the owners of lots purchased on the faith of such reservations are concerned, is merely nominal. On either theory the rights of the owners of lots to prevent the use of the reserved property for any other than the purpose named in the plat rest upon a grant or covenant and not alone upon an equitable estoppel.

Upon the trial of this case, appellees rested after introducing the plats filed by appellant, one of the deeds executed by appellant to a purchaser of lots at the auction sale, and an agreement by both parties that all deeds contained recitals like those in the deed offered in evidence. It is the theory of appel-

lant that the rights of appellees, if any they have, must rest in an estoppel in pais, and it is here urged that judgment should have been for appellant, because the evidence is insufficient to establish facts working such estoppel. We would perhaps be justified by the authorities cited in this opinion in holding that the elements of estoppel in pais are so obvious upon the face of the record itself as that no further evidence thereof would be required, but our decision will not be based upon that conclusion. It is our view that the right to prevent appellant from appropriating this strip of land to any other use than for railway purposes was granted by appellant to appellees and their predecessors in title in the deeds executed by appellant, that such grant was a covenant on the part of appellant that it would not use the strip of land for any purpose other than for railway purposes, and that, in order successfully to resist an action brought by appellant, the object of which is to be relieved from the binding effect of its own covenant, it is not required of appellees that they prove an estoppel in pais.

The judgment of the trial court will be affirmed.