## LACKNER et al. v. BYBEE et al.

### No. 11321.

Court of Civil Appeals of Texas. Galveston.
Feb. 12, 1942.

Rehearing Denied March 5, 1942.

216

See, also, 144 S.W.2d 378.

Ira P. Jones, Jr., of Houston, for appellants.

H. E. Bell and Sewell, Taylor, Morris & Connally, all of Houston, for appellees.

GRAVES, Justice.

Originally this was a suit in trespass to try title, and for injunction to prevent appellees from drilling an oil well on land found by the trial court to be their own—that is, Lot No. 342, of the Subdivision—adjoining streets in Shady Acres Subdivision in Harris County, under which appellants claim the title to the minerals. Injunction was denied on February 12, 1940, in the trial court, and the judgment was affirmed by this Court on July 25, 1940, by opinion shown in 144 S.W.2d 378.

By first amended petition filed April 12, 1940, appellants reasserted their title suit below for the title to and possession of the minerals under the streets in the Addition, and also sought recovery of the value of what they termed their share of the oil produced from a well which appellees had successfully completed on their Lot No. 342 on March 5 of 1940. From an adverse judgment by the trial court on May 6, 1941, appellants duly prosecute this appeal.

In other words, the complained of decree simply gave Mrs. Lackner, on the mutually stipulated facts, the title to the 1/16 royalty or mineral interest in the lot here involved that she had originally reserved in conveying such lot to these appellees (as she had likewise done with all other purchasers of lots in the Addition), but denied her any other recovery, thereby holding that, in the circumstances, the appellees owned all other minerals to the center of the street abutting their particular lot.

The able counsel for both sides severally recognize that the appeal presents only a single question of law to this court, but they make distinctions in their respective statements of it, which do not seem to disclose any substantive difference, as follows:

The appellants' statement:

"The controlling issue is the construction to be given Mrs. Lackner's express oil, gas and mineral reservation in her subdivision dedication document on one hand and the general warranty deeds made by her to lot purchasers, which did not expressly convey any portion of the streets, on the other. In other words, does the presumption of grantor's intention ordinarily obtaining, that a deed to a lot carries fee to the center of the street, overcome the grantor's contrary intention expressed in the dedication?"

The appellees' Statement: "The controlling issue on the land title question is: Did appellants warranty deeds conveying the lots adjacent to the streets by reference to the subdivision map, without express reservation of the minerals under the streets, also convey the minerals to the center of the streets, although the prior dedication document expressly reserved to dedicator-owners, their heirs and assigns, all minerals on, in, and under the streets? The last sentence on page 3 of appellant's brief is erroneous, in that it asserts that said dedication instrument expresses the intention that such deeds would not convey any minerals under the streets."

The determinative documents are thus disclosed to be these three:

(1) The general warranty deed from appellants to appellees, conveying their tract to them by this description and sole reservation of a 1/16 mineral interest therein, there being no express one as to the minerals under the streets:

"Tract No. 342 being 145.2 feet by 285 feet, of Shady Acres Subdivision, Third Section, a part of the Henry Reinermann Survey, Harris County, Texas, according to the record of maps and plats of said subdivision.

"There is hereby reserved to the grantor, Laura Lackner, and to her heirs and assigns a royalty interest in and to all oil, gas and other minerals in and under the above described land equal to one-sixteenth (1/16) of the total production of all such oil, gas and minerals in and that may be produced from the above described tract of land, and the grantees, their heirs and assigns, of the fee simple title of said land and the remaining mineral interest therein, shall have

the right at any and all times to grant oil, gas and mineral leases or development contract thereon without joinder of the grantor, her heirs or assigns; it being understood that this royalty reservation shall obtain for and during the lifetime of the said grantor and for the period of twenty-one years and nine months thereafter, unless oil, gas or other minerals are being produced from said land at the expiration of such time, in which event said reservation shall continue as long as production continues, and shall cease thereafter when production ceases."

The conveyance closed with an unqualified general warranty of title to the property;

(2) The Subdivision map of record, according to which such conveyance was made, showing all the streets in the Addition, including that upon which the property involved abutted;

(3) The dedication by appellants of all the streets in the addition, as follows: "We do hereby dedicate the streets to public use, reserving to ourselves, our heirs and assigns, the right to construct and maintain in, under, upon, and across said streets water mains, sewer and gas lines, electric lights and telephones. We further reserve to ourselves, our heirs and assigns, any and all oil, gas or other minerals of every description that may be on, in, or under any of the streets or avenues shown on the attached plat."

This court is constrained to hold the learned trial court to have been correct, in that, upon the legal equivalent of the same state of facts, this single question of law so raised upon the appeal in this instance appears to have been heretofore foreclosed against appellants' contention by these, among others, of our Texas decisions in other litigations: Cantley v. Gulf Production Co., 135 Tex. 339, 143 S.W.2d 912, 915; Cox v. Campbell, 135 Tex. 428, 143 S.W.2d 361, 366; Texas Bitulithic Co. v. Warwick, Tex.Com.App. 293 S.W. 160, 162; Joslin v. State, Tex.Civ.App. 146 S.W.2d 208, 211, error refused; Gulf Sulphur Co. v. Ryman, Tex.Civ.App., 221 S.W. 310, 312; Gulf Production Co. v. Warren, Tex.Civ.App., 99 S.W.2d 616, 621; 9 Corpus Juris, p. 206, § 112; 11 C.J.S., Boundaries, § 45; Mitchell v. Bass, 26 Tex. 372, 380.

The appellants' contrary interpretation is plainly apparent from their quoted statement of the question they pose for this court's determination, so that it need not be restated, nor discussed at length in an effort to give further reasons why it cannot be upheld.

The rationale of the holdings the other way in the cited cases supra seems to be that, because the deed to the appellees did not expressly or otherwise reserve the minerals under the streets themselves (except the recited ⅟₁₆ royalty) but did positively and expressly and unconditionally convey the land itself as so abutting on the streets as so laid out and expressly dedicated to the public, without any indication of an intention to reserve any part of the street itself, that the deed should be construed, in accordance with the well established rule —to convey title to the property to the center of the street on which it so abuts; this for the further reason that express reference is made to the map of the Addition by which the Street had been so dedicated to the public, and no reservation should afterward be read into that dedication which did not appear before upon it in plain and unequivocal terms; in other words, there being absent any express reservation of any other right or title in the streets, the grant to the abutting land itself will be conclusively presumed to go to the center of the street to which it is so tied.

There was in this instance no express reservation in this deed of conveyance itself, wherefore the established doctrine of the common law that a conveyance of land bounded on a public highway carries with it the fee to the center of the abutting street as a part and parcel of the grant itself still obtains; Mitchell v. Bass, supra.

Indeed, neither did the dedication nor the deed in this instance, by reasonable intendment, indicate an intention by appellants that this deed should not convey the land to the center of the street, the dedication appearing rather to merely indicate that appellants only intended for the minerals not to go with the easement to the public by reason of this dedication, but that they should remain in the appellants for themselves, their heirs, and assigns; so that, when they later came by the instrument of conveyance itself, the deed, to alienate it they exercised their purpose by conveying the whole property to the center of the street to the appellees.

The rule of decision having, it is thought, been so unmistakably established, further discussion is deemed unnecessary.

The subsidiary question as to a claimed part of the oil produced the appellants so discuss in their brief is not reached, since it is determined that they can have no interest in it anyway.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.

### On Motion for Rehearing.

The motion has been carefully considered, but is overruled, upon the conclusion that the original disposition of the appeal was correct. However, the appellants' request for additional findings of fact, to the extent set out in the 6th paragraph of the motion, is granted, and the facts are found to be, as thus therein recited by them, to-wit:

"Appellants were the subdividers and dedicators. The property was Mrs. Lackner's separate estate. It was stipulated in the agreed statement of facts that she had never parted with the mineral estate in the street area involved, unless she must be deemed to have parted with same by the twenty-six deeds from her to various lot purchasers within the drilling block of 19.86 acres, the deed to appellees being typical in all pertinent provisions. It was stipulated in the agreed statement of facts that this suit involved the mineral estate in 4.76 acres of the street area within said drilling block in the Eureka oil field as shown by map. That appellees claim the mineral estate in the streets, within their drilling permit area, by virtue of deed to Lot 342 from appellant and a pooling of twenty-three individual leases made by the respective lot owners within the said area. The street area made up 4.76 acres and the lot area 15.10 acres. Appellees obtained permit from the Railroad Commission of Texas to drill on said 19.86 acres December 8, 1939. Appellees commenced their well within said permit area February 15, 1940, completed it as a producer of oil and gas March 5, 1940. The parties agreed on the market value of the oil produced and the quantity produced prior to the trial. Eureka Oil Field rules adopted by the Railroad Commission provided minimum drilling units of 20 acres, unless an exception was granted as was done to appellees, and provided that wells would be allowed produc-tion by assigning 50 per cent to the well and fifty per cent to the acreage. Production of units of less than 20 acres to be determined by their ratio to 20 acres. The Commission under said rule allowed appellees to produce the daily quantities set out as in schedule at Statement of Facts page 49. The cost of drilling and equipping the well and producing the oil was also agreed on and stated, to be used if it became material. The map shows that the contiguous area in the drilling block is composed of Lots 340, 341 and 342, containing 2.85 acres West of Beall Street, South of 19th Street, and North of 18th Street. The streets claimed by Mrs. Lackner separate such lots from the rest of the drilling block."

Motion refused.