No. 26,022.

No. 26,191.

LEVI BOWERS (ARTHUR MARKS, substituted Plaintiff) et al., *Appellees*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

#### SYLLABUS BY THE COURT.

1. HIGHWAYS—*Reversion on Vacation—Adjoining Owners.* A forty-foot highway was established across a tract of land. The north line of the highway was twenty-five feet south of a railroad right of way. The railway company purchased the twenty-five-foot strip for use in connection with operation of the road and received a general warranty deed in the usual form. The deed in fact bounded the land on the highway, but without mentioning it, and stated the quantity of land conveyed. The deed was duly recorded, and afterwards the highway was vacated. *Held,* the grant extended to the center of the highway, subject to the public easement, and when the highway was vacated the railway company was owner of the unencumbered fee of the moiety of the way by the same title and to the same extent as of the twenty-five-foot strip.

2. ADVERSE POSSESSION—*Hostile Character of Possession—Privies by Deed.* After the highway was vacated the grantor and those holding under him continued in. open, notorious and exclusive possession of the land which constituted the way, claiming to own it, and they paid taxes upon it. *Held,* the facts stated do not show that the statute of limitations barring recovery of the land by the railway company commenced to run, or that the possession was adverse to the railway company.

Appeal from Douglas district court; HUGH MEANS, judge. Opinion filed July 11, 1925. Reversed.

*William R. Smith, Owen J. Wood, Alfred A. Scott, Alfred G. Armstrong,* all of Topeka, and *Raymond F. Rice,* of Lawrence, for the appellant.

*A. B. Mitchell* and *J. H. Mitchell,* both of Lawrence, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to enjoin the railway company from using a strip of land twenty feet wide constituting the north half of a vacated highway, which before it was vacated adjoined land of the company purchased for railroad purposes. The court found that when the highway was vacated title to the strip vested in the company, but that title had been lost by adverse possession.

1. Highways, 29 C. J. §§ 257, 258; 18 A. L. R. 1008.  2. Adverse Possession, 2 C. J. § 246; Highways, 29 C. J. § 258.

Judgment was rendered accordingly. The railway company appeals on the ground the last finding was erroneous, and plaintiff cross-appeals on the ground the first finding was erroneous.

The land in controversy is adjacent to defendant's Lake View station. At the place in question the railway company's right of way was originally fifty feet in width. In the center was laid the main track between Kansas City, Mo., and Topeka, Kan. North of the main track the telegraph line of twenty-five wires was constructed. South of the main track a passing track was laid. At the east end of the strip in controversy is a highway running north and south across the right of way. The Lake View station is on the east side of this highway and on the north side of the right of way. East of the station the railway company has a right of way 200 feet in width. The land south of the right of way and west of the north-and-south road belonged to Eben Baldwin. In April, 1897, a forty-foot highway was established on Baldwin's land parallel with and 25 feet from the south boundary of the right of way. In August, 1897, the railway company purchased the twenty-five foot strip lying between the highway and the right of way from Baldwin, who gave a general warranty deed in the usual form, which was duly recorded. In December, 1897, the highway was vacated.

When the highway was established it constituted an easement for the benefit of the public, and the fee of the land appropriated for the way remained in Baldwin. The common law on the subject is in force in this state, and the doctrine that a private person may have the fee of a highway was recognized and applied in an interesting case found in the Year Books of 17 Edward III, A. D. 1343. John Hacklut distrained for rent in arrears, in the high street of the town of Huntingdon. John de Brandestone and others recaptured with force and arms the two horses harnessed in a cart which has been seized. Hacklut brought an action of rescous, and the declaration was that the distraint was made within Hacklut's fee. The case came on for hearing in the court of common pleas, before the chief justice, Stonore, and Justices Hillary and Shardelowe. Grene represented the plaintiff and Seton the defendants. The report of the case reads in part as follows:

"*Seton.* The place of taking is the highway, which is out of your fee; and you would have taken the horses, and we would not suffer it; judgment whether tort, &c. *Grene.* Within our fee; ready, &c. *Seton.* The taking was effected in the highway, and so out of your fee; ready, &c. *Grene.* That issue is

double: one that the taking was effected in the highway so as to abide judgment in law whether the highway can be within our fee; the other that the place is out of our fee, which falls under the head of fact. HILLARY to *Seton*. Do you think that a highway cannot be within his fee? Certainly it can: for if I enfeoffed you of a manor to hold of me, through which manor there is a road, and a highway, I should distrain in that highway for my services, if it were not forbidden by the statute (52 Hen. III, Marlb., c. 15) so that I can have a fee there. To this STONORE and SHARDELOWE agreed." (Trinity Term, No. 31, Year Books 17, Edw. III, p. 574, Chronicles, &c., edited and translated by Pike.)

As the case cited shows, ownership of the land beneath a highway was a matter of much importance in early times. Not only might the owner distrain in the way, but he was entitled to all the profits—soil, stone, trees, wood, grass—and it was finally established that he could bring trespass for injury and ejectment for possession. When ways commenced to mark boundaries between holdings, the presumption was that a way forming a boundary had originally been established equally on the land of each proprietor, and consequently that each had the fee *usque ad medium filum viæ*. The presumption was rebuttable, however, by proof that the way was wholly or chiefly on the land of one.

The presumption of ownership to the middle of the road was applied to conveyances, and a deed of general words bounding land on a highway, or granting land bounded on a highway, presumptively carried title to the center of the way. This presumption was not rebuttable in precisely the same manner as the presumption that the way rested equally on the land of the adjoining properties. If the way was wholly upon the land of one, the deed of the other could not convey any part of the soil beneath the way, and the extent of his fee could be shown; but if the proprietor having title to the land under the way conveyed, his deed carried title to the middle of the way if he owned that far. To avoid this consequence, it was necessary for him to exclude the soil under the way from the conveyance, and the question became one of interpretation of the conveyance. The deed was to be interpreted most favorably to the grantee. The probability that the grantor would purposely deprive his grantee of the benefit of the servient soil, and reserve what in the great majority of instances would be of no use to the grantor, was always slight. Experience revealed that separate ownership of long, narrow strips of land distinct from the territory adjoining on each side was prolific of private dispute and public disturbance, and

public policy became an important factor in the interpretation. Therefore it became settled doctrine that a deed of land abutting on a road passes a moiety of the road, unless intention not to do so be clearly indicated.

Such was the common law of England, and its adoption in this country is well disclosed by the treatment of the subject of highways in the third volume of Kent's Commentaries, which appeared in 1828. The following extract is pertinent to the present controversy:

"The established inference of law is, that a conveyance of land bounded on a public highway carries with it the fee to the center of the road, as part and parcel of the grant. The idea of an intention in a grantor to withhold his interest in a road to the middle of it, after parting with all his right and title to the adjoining land, is never to be presumed. It would be contrary to universal practice; and it was said, in *Peck v. Smith,* 1 Conn. 103, that there was no instance where the fee of a highway, as distinct from the adjoining land, was ever retained by the vendor. It would require an express declaration, or something equivalent thereto, to sustain such an inference; and it may be considered as the general rule that a grant of land bounded upon a highway or river carries the fee in the highway or river to the center of it, provided the grantor at the time owned to the center, and there be no words or specific description to show a contrary intent." (3 Kent Com. 433.)

It was inevitable there should be some divergence, both of statement and application of principle, while the American courts were weaving the common law into the fabric of their own legal systems, and the process of adaptation was sometimes affected by statutes relating to highways; but Chancellor Kent's statement of the law has been generally approved.

The common law on the subject under consideration is in force in this state, except as modified by statute. (*Tousley v. Galena M. & S. Co.,* 24 Kan. 328.) The only statutes which need to be noticed are those that place the fee of city streets in the county. The subject of who owns the fee of a highway becomes important when the highway is vacated. At common law, when the public easement terminated the owner of the fee became entitled to full enjoyment. Frequently it was said the highway "reverted" to the fee owner. What occurred was, the burden in favor of the public was lifted. Following the analogy of the common law, the statutes annex the fee of a vacated street to the fees of the owners on each side, as if they and not the county had owned the street, by declaring that the fee reverts to them.

In this instance, after the highway had been established, Baldwin

owned the highway, subject only to the public easement, and he owned without encumbrance land on both sides of the highway—a strip twenty-five feet wide on the north and a large tract on the south. He conveyed the twenty-five foot strip to the railway company by a deed containing the following description:

"All that land in the west half of the southwest quarter of section ten (10), township twelve (12), south of range nineteen (19) east (W½ of SW¼, sec. 10, twp. 12, S. R. 19 E), bounded on the north by a line 25 feet south of and parallel to the center line of the main track of the Kansas City, Topeka and Western Railroad and on the south by a line 50 feet south of and parallel to said center line of said main track, containing 81/100 acres more or less."

The line fifty feet south of and parallel with the center line of the main track was the north line of the highway. Did his deed convey the fee of the highway to its center?

This court has approved the doctrine that to exclude half of the highway from a conveyance, the grantor must make his purpose to exclude clear by express declaration, or equivalent of express declaration, in the instrument. (*Tousley v. Galena M. & S. Co.*, 24 Kan. 328.) In delivering the opinion in the Tousley case Justice Brewer quoted authorities declaring that, unless the road or street be expressly excluded, the grantee takes to the center, and quoted from the opinion of Justice Redfield in the case of *Buck v. Squiers*, 22 Vt. 484, as follows:

" 'And to have this rule of the least practical importance to cure the evil which it is adapted to remedy, it must be applied to every case where there is not expressed an evident and manifest intention to the contrary, one from which no rational construction can escape.' " (p. 332.)

The result is, the rule adopted in this state is that intent to include the highway is inferred as a matter of law, unless intent to exclude is plainly expressed.

The Baldwin deed disclosed a grant of land between the right of way and the highway, and nothing more. The only matters upon which to base an argument that the highway was excluded are that the quantity of land was mentioned and the highway was not mentioned. Both were held not to be indicative of intent to exclude, in the opinion of Justice Haight in the case of *Van Winkle v. Van Winkle*, 184 N. Y. 193:

"Where a survey gives the dimensions and quantity of the land conveyed exclusive of the public way, it does not operate to destroy the presumption that the fee to the roadbed was conveyed, for the reason that such dimensions and quantity of the usable land is ordinarily deemed by the purchaser of para-

mount importance in determining its availability for the uses designed by him. Where a deed gives the boundaries of the land conveyed by courses and distances, without mentioning a street by which the same is bounded on one side, but where it appears that the distance given does in fact carry the boundary to the street and along it, it is the same as though the boundary were described as running to the street and along the same, thus extending the title to the center; and where a line runs to a stake or to a mark upon a fence or a tree upon the bank of a stream or upon the side of a highway, and thence along the meandering of the stream or along the highway, the stake, mark or tree will be deemed to indicate the place of the line and not the end thereof, by reason of the difficulty of maintaining a visible object marking the corner in the middle of a stream or in the roadbed of a highway, thus vesting the title in the grantee." (p. 204.)

In the case of *Hannon v. Kelly*, 156 Wis. 509, the question was, who had title to a platform hay scale in a street, after a conveyance of real estate described by metes and bounds, which followed the lot lines on the side toward the scales. The court said:

"It is elementary that a sale and conveyance of realty abutting upon a street, in the absence of clear express indications to the contrary, includes to the center of the street [citing authorities]. So the scales in this case were located on the land conveyed to plaintiff. She owned it subject to the public right to use it for street purposes as completely as she did the land inside the lot line. She having sold and conveyed the property as the jury found she did, evidence that she claimed the scales to be personalty clearly contradicts the deed." (p. 516.)

In the case of *Simpson v. Dendy*, 8 C. B., n. s., 433, the English court of common pleas held that a grant of land bounded by Hall Lane vested soil of Hall Lane to the center of the way in the grantee, although it was not necessary to include any part of the lane to make up the quantity of land specified in the conveyance; and in the case of *Berridge v. Ward*, 10 C. B., n. s., 400, it was held that if a piece of land which adjoins a highway is conveyed by general words, the presumption of law is that the soil of the highway to the middle of the way passes by the conveyance, even though reference is made to a plan annexed, the measurements and coloring of which would exclude it.

The result is that Baldwin conveyed to the railway company the land to the center of the highway as effectively as though the description had fixed the south line of the grant seventy feet from the center of the railroad track instead of fifty feet, and when the highway was vacated the grant was simply freed from the overlying public easement.

Defendant says Baldwin's deed disclosed no intention to convey half of the highway. This is not the interpretative test. The test is whether the deed expressed intention to exclude half the highway from the grant. It is manifest the deed did not do so, and the estate of the railway company in the soil of the vacated strip is of the same nature and was acquired in the same manner as its estate in the land, which after purchase and before vacation lay between the right of way and the highway.

There is some contention that, because defendant is a railway corporation, it lacked capacity to take the north half of the highway. The question was not raised by the petition, which alleged that the railway company had no right, title nor interest in the strip, either by deed from plaintiff or anyone under whom he claimed title, or by condemnation proceedings. Evidently the purpose was to raise the question of sufficiency of the conveyance to carry title to the railway company, and not capacity of the railway company to take. However, Baldwin took the consideration and executed and delivered the deed, and neither he nor those claiming under him have any standing to raise the question of *ultra vires*. (*Harris v. Gas Co.*, 76 Kan. 750, 92 Pac. 1123; *Ballard v. Bank*, 91 Kan. 91, 136 Pac. 935; *Bank v. Wilson*, 101 Kan. 72, 165 Pac. 859; *Kelly v. Insurance Co.*, 101 Kan. 91, 165 Pac. 806; *Gigoux v. Moore*, 105 Kan. 361, 364, 184 Pac. 637.) Besides that, capacity of the railway company to take is not an open question.

In the case of *A. T. & S. F. Rld. Co. v. Patch*, 28 Kan. 470, this court decided that if title to a vacated city street reverts to the abutting lot owner (a matter definitely settled long ago, *Rowe v. Bowen*, 113 Kan. 641, 215 Pac. 1022, and cases collated in the opinion), title to the street passes to a railroad company by condemnation of the lots.

Patch owned lots on Crane street in the city of Topeka. The street was vacated. The railroad company then condemned the lots by lot number, no reference being made to the land which had formed the street. The district court granted an injunction restraining the railroad company from using the strip of land. The railroad company contended that when the street was vacated title reverted to the person who platted the addition and thereby dedicated the street to public uses; but if title did revert to those who owned the lots when the street was vacated, the street became part and parcel of the lots and was included in the condemnation. The

court sustained the latter contention, and directed dissolution of the injunction, holding the street became, as it were, a part of the lots, something in the nature of an accession to them, and that any kind of conveyance of the lots would carry with it the attached portion of the vacated street.

In the Patch case the ultimate basis of the railroad company's right to take the vacated street was not stated. In the case of *Challiss v. Depot & Rld. Co.*, 45 Kan. 398, 25 Pac. 894, the Patch case was approved and followed, and the right was founded on the nature of the railroad company's ownership of land condemned for railroad purposes:

"The fee of the streets is in the county for the use of the public, and the control of the same has been placed by the legislature in the city. Aside from the accommodation of the general public, the streets afford access and frontage to the property which abuts thereon; and these rights are incidental and appurtenant to such property, and pass by any conveyance or by condemnation of the same. By the condemnation proceedings the company acquired the perpetual use of the lot—a use which in its nature practically excludes any other use or occupancy. Through the appropriation of the lot the company acquired the incidental and appurtenant rights in the street, and upon the legal vacation of the street, that portion situated in front of lot 1 temporarily became, as it were, a part of the lot, and passed to the company." (p. 403.)

The word "temporarily" found in the quotation refers to the reserved right of the city to reopen a street in the future without again paying compensation.

It is true the most unexpected things may happen, and it might be that the Santa Fe railway system would go out of existence. In that event the rule that it has only an easement in its right of way would be applied; but for all practical purposes, including burdens as well as benefits, the railway company is the owner of land acquired for railway purposes. (*Railway Co. v. Labette County*, 113 Kan. 423, 215 Pac. 447.) In the case of *Western Union Tel. Co. v. Penn. R. R. et al.*, 195 U. S. 540, the court said:

"A railroad right of way is a very substantial thing. It is more than a mere right of passage. It is more than an easement. We discussed its character in *New Mexico v. United States Trust Co.*, 172 U. S. 171. We there said (p. 183) that if a railroad's right of way was an easement it was 'one having the attributes of the fee, perpetuity and exclusive use and possession; also the remedies of the fee, and, like it, corporeal, not incorporeal, property.' . . . . —A railroad's right of way has, therefore, the substantiality of the fee." (p. 570.)

Since, as this court held in the Challiss case, the common incident

14—119 Kan.

of ownership—reversion of vacated streets—attaches to ownership of land condemned for railway purposes, because the railway company is virtually the fee owner, the same incident necessarily attaches to land purchased for railroad purposes. Beyond that, to hold otherwise would contravene the sound public policy which sustains the common-law rule relating to highways and the statutes relating to streets, definitely fixing residence of title when the way is vacated.

The district court returned the following findings of fact:

"3. In December, 1897, said public road was regularly vacated, and since such vacation the grantors in said deed or their heirs or assigns, the last of whom are the plaintiffs, have been in open, notorious and exclusive possession of the land which formerly constituted said public road, paying taxes thereon and claiming to own the same.

"4. The defendant railway company, in its attempt just prior to the commencement of this action to take possession of and inclose the real estate in controversy, did so in order to make use of the same for railroad purposes which were proper in connection with the operation of the road.

"5. In the event that the defendant railway shall put in two main-line tracks along the strip of land hereinbefore described, it will probably need more land than it now owns in order to install such double-track system. There is, however, no evidence of immediate necessity for more land."

The evidence on which the third finding is based is fragmentary. It seems that the railway company built its right-of-way fence along the north side of the roadway, but whether before or after the road was vacated does not appear. The roadway was inclosed by fence with the Baldwin tract, and has been used with that tract for farming purposes since December, 1897. It seems the assessor has assigned the vacated highway to the Baldwin tract for purpose of taxation. Neither the evidence nor the finding discloses adverse possession. They might do so if the railway company and Baldwin were strangers, but they are not. They are privies by deed.

In case of *McNeil v. Jordan,* 28 Kan. 7, the syllabus reads:

"While it is the general rule that open, notorious, unequivocal and exclusive possession of real estate under an apparent claim of ownership is notice to the world of whatever claim the possessor asserts, whether such claim be legal or equitable in its nature, yet this rule does not apply to a vendor remaining in possession, so as to require a purchaser from his grantee to inquire whether he has reserved any interest in the land conveyed. Such grantor, though in actual possession, is deemed to hold the same for a temporary purpose, without claim of right, and merely as a tenant at sufferance of the grantee.

"A grantor is not deemed in law to have adverse possession against his grantee or those deriving title from him." (¶¶ 3, 4.)

Bowers v. Atchison, T. & S. F. Rly. Co.

The principle recognized in *McNeil v. Jordan* has been approved and applied in numerous cases, among them *Dotson v. Railway Co.*, 81 Kan. 816, 106 Pac. 1045. In that case a railway company was the grantor. The syllabus reads:

"The possession of a grantor of land after conveyance is not considered to be adverse to his grantee in whom he has vested entire title to the premises, and cannot be so regarded until the grantor explicitly renounces the title of the grantee or positively asserts a claim of title in himself which is brought to the attention of the grantee." (¶ 1.)

In the opinion it was said:

"Since it is deemed that the possession of the grantor is held in subserviency to the grantee, and that he does not intend to deny the title he has conveyed, strong, clear evidence of a purpose to claim adversely to the grantee is necessary to the starting of the statute of limitations." (p. 818.)

In the following cases the railway company was grantee: *Graham v. St. Louis, I. M. & S. R. Co.*, 69 Ark. 562; *Chicago, M. & S. P. R'y Co. v. Snyder*, 120 Ia. 532; *Jeffersonville, Madison and Indianapolis Railroad Company v. Oyler*, 82 Ind. 394. In each of these cases the grantor held exclusive possession of an inclosed portion of the granted land, and used it for purposes to which it was adapted until after the period of limitation had expired. In each case it was decided possession and use by the grantor was not sufficient to start the running of the statute.

In this instance the finding goes somewhat beyond the evidence. It should be modified to read "as if they owned the same." However, the finding does not include the essential ingredient of adverse possession in this class of cases—positive assertion of hostile claim brought home to the grantee. Therefore the finding is insufficient to sustain the judgment.

The fourth finding of fact is that the railway company was about to make use of the land in controversy for purposes which were proper in connection with operation of the road. It is not disputed the land specifically described in the deed was properly acquired for railroad purposes. As indicated above, when a way is vacated the latent fee becomes identified with the fee of the adjoining land. The words "accretion" and "attached portion" have been used to characterize the enlargement of use and benefit which occurs. In any event, what before vacation were highway and adjoining land become one parcel. It is the policy of the law that the distinction between them should be obliterated and that they should be amalgamated. Therefore they should be regarded as of the same quality

for all general purposes. In this instance, roadway became railroad right of way, and, under the rule adopted by this court, possession of Baldwin and those holding under him could not be adverse until the possession prejudicially obstructed some use of the land for railroad purposes. (*Harvey v. Railroad Co.*, 111 Kan. 371, 207 Pac. 761.) There is no evidence or finding that anything of that character occurred. Therefore the findings do not sustain the judgment.

The judgment of the district court is reversed, and the cause is remanded with direction to deny the injunction.