GULF PRODUCTION CO. et al. v.
WARREN et al.

No. 2788.

Court of Civil Appeals of Texas.
Beaumont.

Nov. 19, 1936.

Rehearing Denied Dec. 16, 1936.

O. S. Parker, of Houston, Orgain, Carroll & Bell and Duff & Cecil, all of Beaumont; P. O. Settle, of Fort Worth, and John E. Green, Jr., of Houston, for appellants.

W. D. Gordon and E. E. Easterling, both of Beaumont, for appellees.

WALKER, Chief Justice.

This is a suit by appellee, the Oakwood Realty Company, against appellants, the Gulf Production Company, Rio Bravo Oil Company, and Texas & New Orleans Railroad Company, to recover 5/7 of the value of the oil produced, less the expenses of production, from 77/100 of an acre in the Texas & New Orleans Railroad right of way, in the John Douthit survey, Jefferson county, Tex. We quote as follows from appellee's petition:

"The Oakwood Realty Company prior to the year 1925 acquired and was the lawful owner in fee simple title of two certain tracts or parcels of land situated in the Douthit Survey in Jefferson County, Texas, which are described as follows:

" 'First Tract:

" 'Block No. 3, containing five and twenty-seven one hundredths acres (5.27) specified and described in a subdivision or partition of a portion of said John Douthit Survey made between J. M. Hebert and Clara Chaison and the heirs of Jef Chaison, deceased, which is more fully described by a deed of partition with accompanying plat thereto attached, dated the 13th day of April, 1901, filed for record on the 17th day of that month, and recorded in Vol. 38, page 427, of the Deed Records of Jefferson County, Texas, to which reference is hereby made for descriptive purposes. Said Block No. 3 is limited as to its southwest boundary by the eastern line of the T. & N. O. Railroad Company right-of-way, and is bounded on the north by Block No. 4 of said Subdivision and on the east by Block No. 2, and on the south by the south boundary line of said Douthit Survey, except about, however, twenty-seven one hundredths (27/100) of an acre of said survey theretofore sold and conveyed by the heirs of Jef Chaison, deceased, situated in the north corner of said block.' * * *

" 'Second Tract:

" 'The said Oakwood Realty Company likewise owned adjacent to the foregoing Block No. 3, the following tract or parcel of land located within what is known as the T. & N. O. Railroad right-of-way, to-wit:

" 'Beginning at the northwest corner of said Lot or Block No. 3 at a stake in the east line of said railroad company right of way, it being coincident with the southwest corner of Lot or Block No. 4;

" 'Thence South 45 degrees west approximately 102 feet to a stake in the center line of the said T. & N. O. Railroad Company's main line railroad;

" 'Thence South 27 degrees 40 minutes east with the center line of said railroad 354.4 feet to a stake in the center thereof, being the south line of the Douthit Survey;

" 'Thence North 45 degrees east approximately 102 feet to a stake in the east line of the railroad company right of way, it being the southwest corner of Lot or Block No. 3, above described;

" 'Thence north 27 degrees 40 minutes west with the east line of said railroad right of way coincident with line of said Lot or Block No. 3, approximately 354.4 feet to the place of beginning.' * * *

"The ownership, however, of the last above described tract is subject to the easement right of said railroad company to use the surface exclusively for its own purposes under a deed of conveyance made to it by the predecessor in title of all parties."

It was further alleged that on the 12th day of December, 1925, Oakwood Realty Company executed and delivered to Gulf Production Company a written mineral lease upon the tract of land designated in its petition as "First Tract: Block No. 3 containing five and twenty-seven one hundredths acres (5.27)" and described in the lease as follows: "Block No. Three, containing five and 27/100 (5.27) acres according to a subdivision or partition of a tract of about fifty-two (52) acres of the John Douthit survey, situated in Jefferson

County, Texas, between J. M. Hebert and Clara Chaison and the heirs of Jef Chaison, deceased, said Block Three (3) being bounded on the Southwest by the right-of-way of the T. & N. O. Railroad; on the North by Block Four (4) of said subdivision, on the East by Block Two (2) and on the South by the South Boundary line of the said John Douthit survey; except however, about twenty-seven one-hundredths ($^{27}/_{100}$) acres of said survey heretofore sold and conveyed by the heirs of Jef Chaison, deceased, situated in the North corner of said Block."

Appellee has brought forward in its brief the following conditions of this lease as material to this appeal:

"First. Said Lessee shall have the exclusive right to make as many attempts, if and as Lessee shall desire, to find oil or gas in paying quantities on or in said premises."

"Second. If, during the continuance of said exclusive right, there shall be found on said premises oil or gas or other minerals in paying quantities, then from and after such discovery none of the conditions or provisions of Paragraph First shall have any application, and said Lessee shall have the exclusive right to mine for and produce any and all of the minerals underlying said premises, so long as any one of them can be produced in paying quantities, and without any requirement to make any further payment to continue this lease in force, except to deliver the royalties as hereinafter stipulated."

"Third. If oil should be found in paying quantities on said premises, the Lessee shall deliver as royalty to said Lessor, free of expense, one-seventh ($^{1}/_{7}$) part of the oil saved from that produced."

. Appellee alleged further that the lease from Oakwood Realty Company, to Gulf Production Company covered only the first tract of land described in their petition as "Block No. 3," containing 5,27 acres of land, and that the lease did not cover the "second tract" of $^{77}/_{100}$ of an acre of land; that the $^{77}/_{100}$ of an acre was not within the boundaries nor a part of the 5.27 acres, and that no obligation of the Gulf Production Company was contained in said instrument in any way in connection with the $^{77}/_{100}$ acre of land, but that the description of the land and the obligation in connection therewith, as contained in the instrument, pertained only to the first tract of land. It was then alleged:

"Rio Bravo Oil Company procured the right and privilege to enter upon said railroad right of way exclusively under the dominion and control of the Texas & New Orleans Railroad Company (of which the $^{77}/_{100}$ of an acre in controversy was a part) and moved a derrick upon the second tract above described, belonging to your plaintiff's corporation, the Oakwood Realty Company. It secured no right or privilege from the Oakwood Realty Company to enter upon said land or to drill for oil thereon. It was in fact a trespasser without right as against your petitioner's corporation, the Oakwood Realty Company.

"Thereupon the Oakwood Realty Company about the ―――― day of July, 1926, filed a suit in the Sixtieth District Court in its name against the said Rio Bravo Oil Company and Texas & New Orleans Railroad Company (No. 2704 on the docket of the lower court), seeking an injunction against them from entering upon said land and from drilling wells thereon and from producing oil therefrom.

"In that petition by reason of the fact that the said Gulf Production Company had secured the lease from the Oakwood Realty Company hereinabove set forth on the first tract of land hereinabove described being Lot or Block No. 3 outside the railroad right of way and separate and apart from the second tract hereinabove described in said right of way, said Gulf Production Company joined in said suit, alleging that such operations by the trespassing defendants in that suit, to-wit: Rio Bravo Oil Company and Texas & New Orleans Railroad Company would result if allowed to continue in drawing the oil through percolations in the sands from under the tract of land so leased by it as aforesaid.

"The Gulf Production Company therefore joined as a co-plaintiff with the Oakwood Realty Company in said injunction suit to prevent said trespass. No issue whatever was raised between the said Oakwood Realty Company and the said Gulf Production Company in such proceeding, but a common bill or petition was presented against the said Rio Bravo Oil Company, et al., to restrain and abate the trespass on said second tract of land above described within the right of way."

Appellee alleged further that Weed et al. v. Rio Bravo Oil Co. et al., No. 26969, was pending on the docket of the lower court at the same time with Oakwood

Realty Company et al. v. Rio Bravo Oil Company et al., No. 27047, and that the parties to cause No. 27047 agreed that it should abide the result of No. 26969; that a final decision adverse to the Rio Bravo Oil Company was rendered in the case of Weed et al. v. Rio Bravo Oil Company et al. (121 Tex. 427, 50 S.W.(2d) 1080, 85 A.L.R. 391) and writ of certiorari denied February 8, 1933 (288 U.S. 603, 53 S.Ct. 387, 77 L.Ed. 978); and that the Rio Bravo Oil Company and Texas & New Orleans Railroad Company thereupon became liable under the operating agreement for the value of the oil produced from the 77/100 of an acre of land, less the expenses provided for in said agreement, amounting to $4,460,844.71; that the Rio Bravo Oil Company paid to the Gulf Production Company the value of the oil produced and that the Gulf Production Company thereupon paid to the Oakwood Realty Company the full ⅐ of the total value of the oil produced from said parcel of land, amounting to $637,263.53, but that Gulf Production Company failed and refused to pay the Oakwood Realty Company the remaining ⁶⁄₇ which, together with interest thereon, amounted to $3,938,288.61, for which this suit was brought.

The Gulf Production Company answered the Oakwood Realty Company's petition with a general demurrer, general denial, and specially alleged that the lease of December 12, 1925, from the Oakwood Realty Company conveyed to the Gulf Production Company the minerals in and under said 77/100 of an acre in the railroad right of way; that the Oakwood Realty Company ratified and confirmed said lease as covering said minerals and was estopped to claim that such lease did not cover the minerals in that part of lot No. 3 in the railroad right of way; that the final decision rendered in the case of Rio Bravo Oil Company et al. v. Weed et al., 121 Tex. 427, 50 S.W.(2d) 1080, 85 A.L.R. 391, was not only stare decisis, but res judicata of this controversy; that the Gulf Production Company and Oakwood Realty Company, by express agreement, divided the oil and gas produced and to be produced from that part of lot 3 in said right of way, in accordance with the terms of the lease, ⅐ royalty to the Oakwood Realty Company and the remaining ⁶⁄₇ to the Gulf Production Company, subject to all expenses of production; that the Oakwood Realty Company accepted the ⅐ of the full value of the

oil and gas produced from said 77/100 of an acre, amounting to $637,263.53, in full, final, and complete settlement of all amounts due the Oakwood Realty Company by virtue of said cause No. 27047, styled Oakwood Realty Company et al. v. Rio Bravo Oil Company et al., in the Sixtieth district court of Jefferson county, Tex.

The Rio Bravo Oil Company and Texas & New Orleans Railroad Company filed similar answers to the petition of the Oakwood Realty Company.

The trial court overruled defendants' general demurrers and at the conclusion of the evidence refused the defendants' request for a peremptory instruction in their favor, but instructed the jury to return a verdict in favor of Oakwood Realty Company for the sum of $3,395,611 and on November 21, 1934, rendered judgment thereon in favor of the Oakwood Realty Company.

Gulf Production Company, Rio Bravo Oil Company, and Texas & New Orleans Railroad Company excepted to such judgment and gave notice of appeal and filed their appeal and supersedeas bond December 8, 1934. The record was duly perfected and filed in this court January 14, 1935.

Appellee holds title to the 77/100 acres of land in controversy under the following chain of title: The John Douthit 152-acre survey, Jefferson county, Tex., was patented April 23, 1867, and passed by mesne conveyances to Mrs. Martha D. Janes, who, in 1881 granted to the Sabine & East Texas Railroad Company a right of way, or easement, 200 feet wide across the northeast portion thereof. Mrs. Janes conveyed the 152-acre survey and it passed by mesne conveyances to J. M. Hebert and Jef Chaison, who conveyed the southwest 100 acres thereof, leaving title in themselves to the 52 acres across which the railway right of way extended. Chaison died, leaving his ½ interest in the 52 acres to his surviving wife and children, Clara Chaison et al.

Hebert and the Chaison heirs subdivided this 52 acres into eight lots and executed a partition deed, with plat attached, April 13, 1901, wherein Hebert conveyed to the Chaison heirs lots 1 and 3, containing 5.7 acres each, and lots 5 and 7, containing 6.9 acres each, as their share of the said 52 acres, and the Chaisons conveyed to Hebert lots 2 and 4 containing 5.7 acres

each, and lots 6 and 8 containing 6.9 acres each, as his share of the said 52 acres.

The Chaisons, after securing lot No. 3, conveyed 27/100 of an acre, sometimes referred to as 1/16 of an acre, in the northeast corner thereof to H. T. Staiti, and then conveyed the remainder of lot No. 3 "allotted to the heirs of Jef Chaison, deceased, in said partition between them, Clara Chaison and J. M. Hebert," to the Jef Chaison Townsite Company. The Jef Chaison Townsite Company, on August 12, 1902, conveyed to the Cartwright Oil & Development Company: "Block No. Three containing five and 27/100 (5.27) acres according to a subdivision or partition of a tract of about fifty-two (52) acres of the John Douthit survey, situated in Jefferson County, Texas, between J. M. Hebert and Clara Chaison and the heirs of Jef Chaison, deceased, said block Three (3) being bounded on the Southwest by the right of way of the T. & N. O. Railroad on the North by Block four (4) of said subdivision on the East by Block Two (2) and on the South by the south boundary line of the said John Douthit survey, except however about twenty-seven one-hundredths (27/100) acres of said survey heretofore sold and conveyed by the heirs of Jef Chaison, deceased, situated in the North corner of said block."

The Cartwright Oil & Development Company on October 25, 1907, conveyed to the Oakwood Realty Company said lot or block No. 3 "according to a partition of the same, between J. M. Hebert on the one hand and Clara Chaison and heirs of Jef Chaison deceased on the other hand," excepting therefrom the 27/100 acre in the northeast corner thereof.

Under the operating agreement made by the parties in cause No. 27047 Rio Bravo Oil Company entered upon the 77/100 of an acre of land, and, as we understand the record, there is no controversy as to the amount of oil produced therefrom nor as to its value.

For a description of the 52 acres above referred to, of which the 77/100 of an acre is a part, for the issues in cause No. 26969 which were the identical issues in cause No. 27047, see the opinion of this court in cause No. 26969, Rio Bravo Oil Company v. Weed, 300 S.W. 171, and the opinion of the Supreme Court on writ of error, same case, 121 Tex. 427, 50 S.W. (2d) 1080, 85 A.L.R. 391.

## Opinion.

Oakwood Realty Company had no title to the 77/100 of an acre of land in controversy except by, through, and under its deed from Cartwright Oil & Development Company, dated October 27, 1907, referred to above. But, under the principles of law announced by this court and the Supreme Court in Rio Bravo Oil Company v. Weed, cited above, the description in the deed from Cartwright Oil & Development Company included the 77/100 acres of land in controversy, which was a part of the right of way of appellant, Texas & New Orleans Railway Company. On this point appellee makes the following concession: "It is conceded that the deed conveying Lot 3, abutting upon the railroad right-of-way, an area 200 feet wide, embraced in the deed from Mrs. Janes to the railroad company, invested in the Oakwood Company the absolute, complete fee simple title to Lot 3 and to the 77/100 acre within the easement appurtenant to Lot 3. There is no issue or question that the Oakwood Company was therefore the owner of that entire area to the center of the railroad track as to the minerals within the railroad right-of-way, as well as the complete, absolute fee simple estate, unincumbered by any easement, in the five acres known as Lot 3." Though Oakwood Realty Company concedes and claims that its deed from Cartwright Oil & Development Company conveyed to it the 77/100 of an acre of land in controversy, a part of the right of way of appellant Texas & New Orleans Railway Company, it contended by the allegations of its petition filed in the lower court, and makes that contention in this court, that its mineral lease to Gulf Production Company conveying block or lot No. 3, under the identical description by which it held title to that block and to the 77/100 of an acre in controversy, did not convey the 77/100 of an acre. The authorities do not support this construction of the mineral lease.

Oil and gas in place are minerals —a part of the realty—subject to ownership, severance, and sale. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566. The written instrument executed to Gulf Production Company by Oakwood Realty Company, though designated an "oil and gas lease," was not a technical lease, to be construed by the law of "Landlord and Tenant," but it was a present conveyance

of the oil and gas under the premises described in the lease, and vested in Gulf Production Company a determinable fee in the oil and gas in place. Jones v. Bevier (Tex.Civ.App.) 59 S.W.(2d) 945, 948 (writ refused): "The lease, upon its execution and delivery by appellants to appellee, operated as a present conveyance of the oil and gas under the premises described in the lease, and vested in appellee a determinable fee in the oil and gas in place. Texas Company v. Davis, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27, 30. These cases clearly hold that an 'unless' oil and gas mineral lease, such as is in issue in this case, is not a mere option or executory contract, but a present grant of an interest in the land. After reviewing carefully these cases, Mr. Walker, in a very able article, Property Interests Created by Lease, Texas Law Review, vol. vii, No. 1, at page 20, says: 'Rightly understood, a lease is not an executory contract but a present conveyance of an interest in land, and this is the well settled view of Texas courts today.' In the recent case of Martin v. Dial, 57 S.W.(2d) 75, 81 [89 A.L.R. 571], Judge Leddy, speaking for the Commission of Appeals, says: 'It is equally clear that the sale of the oil and gas lease was a sale of an interest in the land. It is no longer an open question in this state that an oil and gas lease similar to the one under consideration conveys an interest in land. The purchaser of such lease takes a determinable fee to the minerals in place.' Judge Leddy supports this proposition by citing the Stephens County Case and Corsicana Petroleum Co. v. Owens, 110 Tex. 568, 222 S.W. 154, and Hager v. Stakes, 116 Tex. 453, 294 S.W. 835." Bailey v. Shell Petroleum Corp. (Tex.Civ.App.) 95 S.W.(2d) 982 (writ refused); Ehlinger v. Clark, 117 Tex. 547, 8 S.W.(2d) 666; Theisen v. Robison, 117 Tex. 489, 8 S.W.(2d) 646; Sheffield v. Hogg (Federal Royalty Co. v. State), 124 Tex. 290, 77 S.W.(2d) 1021, 80 S.W.(2d) 741.

The instrument in writing executed by Oakwood Realty Company to Gulf Production Company must be construed, under the authorities cited, as a "conveyance," and, therefore, the rule of law applicable to deeds of conveyance, which takes the grantee to the center of the railway right of way, Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.(2d) 1080, 1086, 85 A.L.R. 391, is equally applicable to this instrument and makes the $77/100$ of an acre of land a part of the leased premises.

The very point in issue in this case was before the Circuit Court of Appeals, Eighth District, in Roxana Petroleum Corp. v. Sutter, 28 F.(2d) 159, 163, and Roxana Petroleum Corp. v. Corn, 28 F.(2d) 168, 170—the construction of oil and mineral leases which conveyed land abutting on a railroad right of way. Holding that the lease must be construed by the same rules governing the construction of a deed, and that the description of the land in the lease included the railroad right of way, though not specifically included in the description, the court said in the Corn Case: "We held in Roxana Petroleum Corporation v. Sutter et al. (No. 8090; opinion filed July 30, 1928) 28 F.(2d) 159, that when the owner conveys a tract of land abutting on a railroad right of way tract in which such grantor owns the servient estate and the railroad the dominant estate for right of way purposes, his conveyance passes to his grantee such servient estate, unless the intention not to do so be clearly indicated, and we further held that, under the Kansas authorities, the rule applied to an oil and gas lease. See Bowers v. Atchison, T. & S. F. Ry. Co., 119 Kan. 202, 237 P. 913, 42 A.L.R. 228; Cushenbery v. Waite-Phillips Co., 119 Kan. 478, 240 P. 400."

In the Sutter Case the description in the lease did not in express terms include the railroad right-of-way, but used language excluding from the lease the right-of-way in so far as it was burdened with the railroad easement. Construing that instrument the court said:

"It is therefore our conclusion that Blank in his deed to Lyman conveyed not only the land abutting upon the railroad right of way but also the servient estate in that portion of the land conveyed to the railroad company for right of way purposes, and that such servient estate passed with the other land by mesne conveyance to Louie Fritz, the present owner.

"The Roxana Corporation further contends that under the rules above referred to, the oil and gas lease running from Fritz to it included the oil and gas underneath the surface of the right of way tract.

"In Cushenbery v. Waite-Phillips Co., 119 Kan. 478, 240 P. 400, the court said:

"'A legal description which sufficiently defines a tract of land in terms of government survey, * * * should be given no variable significance whether that description appears in a deed, an ordinary lease, an oil and gas lease, or any other instrument in which the property is the subject of any contract or transaction.'

"The foregoing case involved a contest between rival oil and gas lessees to certain accretions to lands of the lessors along the west bank of the Arkansas river. The patents to the grantors from the government specified certain acreages in lots of fractional sections. At the time the oil and gas leases were executed, the lessors had acquired additional acreage in sub-stantial amount through accretions. The prior oil and gas lease described the lands in accordance with the description in the government patents. Subsequent to the making of this lease, the lessors undertook to give an oil and gas lease to the accreted lands. The court held that the original oil and gas leases covered, not only the lands originally patented, but also the accretions thereto.

"If the same rule is to be applied to an oil and gas lease as to a deed, the oil and gas lease made by Fritz to the Roxana Corporation carried with it the oil and gas underneath the surface of the right of way tract."

In Rio Bravo Oil Co. v. Weed, supra, our Supreme Court cited with approval the Sutter Case, saying: "The Circuit Court of Appeals, of which Judge Sanborn was a member, reached the same conclusion as to the effect of a deed conveying land abutting on a railroad right of way. The court made this observation: 'Counsel for the Roxana Corporation (railroad company) further contend that, when the owner conveys a tract of land abutting on a railroad right of way tract, in which such grantor owns the servient estate and the railroad the dominant estate for the right of way purposes, his conveyance passes to his grantee such servient estate, unless the intention not to do so be clearly indicated.'" The Sutter and Corn Cases are absolutely in point on the very issue before us, and since the doctrine announced by those two cases has the affirmative approval of our Supreme Court, we are forced to the conclusion that the same rule must be applied to the description of land conveyed by an oil and gas lease as to land conveyed by a deed, and that the lease in issue before us carried with it the oil and gas underneath the surface of the right of way, that is, the oil and gas underneath the 77/100 of an acre of land in controversy.

For the reasons stated, we sustain appellants' first three propositions, which read as follows:

"Proposition I.

"The lease dated December 12, 1925, from Oakwood Realty Company to Gulf Production Company, calling for the premises leased to be 'bounded on the Southwest by the right-of-way of the T. & N. O. Railroad' extends to the center of the railway right-of-way and includes the minerals in controversy, as a matter of law, under the common law rule that the grantee in such cases takes to the center of the way, in the absence of an expressed reservation, and the Court erred in holding to the contrary."

"Proposition II.

"When the Oakwood Realty Company conveyed to the Gulf Production Company the minerals in and under Lot No. 3, abutting on the railway right-of-way, subject only to a 1/8th royalty, it conveyed to the Gulf Production Company the minerals under said Lot No. 3 to the center of the railway right-of-way, and the Court erred in ruling to the contrary."

"Proposition III.

"The lease from the Oakwood Realty Company to the Gulf Production Company, of December 12, 1925, covers and includes the 77/100 of an acre in the railway right-of-way because it covers all of Lot No. 3 excepting only the 27/100 of an acre in the northeast corner, and the Court erred in holding to the contrary."

On these propositions appellants should have been given an instructed verdict by the lower court.

Appellee advances the following counter propositions to our construction of its lease to Gulf Production Company, and in answer to appellants' first three propositions:

"First Counter-Proposition.

"It is only where the full estate in land bordering on a highway or stream that the common law rule presumes passage

of appurtenant rights in the highway or stream, unless specially reserved.

"It is therefore obvious that the mineral lease dated December 12, 1925, from Oakwood Realty Company to Gulf Production Company of Lot 3 of the subdivision specially described to be 'bounded on the southwest by the right-of-way of the T. & N. O. Railroad' does not come within this rule, because by the terms of the lease only a part of the estate in the land (viz., the oil) was conveyed, in the nature of a conditional base fee, to drill and produce oil exclusively within the boundaries of Lot 3, giving to the Gulf Production Company no title to the surface, or any right therein except a mere use or easement for the purpose only of drilling wells and producing oil, and by a stipulation expressly reserved the use of the land in the Oakwood Realty Company for all other purposes."

"Second Counter-Proposition.

"The mineral lease by the Oakwood Realty Company to the Gulf Production Company on Lot No. 3, abutting on the railroad right-of-way, did not extend by presumption to the center of the railroad right-of-way, and the court correctly ruled that by the terms of the lease the Gulf Production Company had no right or interest in the minerals under the right-of-way."

"Third Counter-Proposition.

"The lease from the Oakwood Realty Company to the Gulf Production Company, of December 12, 1925, by its terms related only to Lot 3, 'bounded on the southwest by the right-of-way of the T. & N. O. Railroad', and did not cover and include the 77/100 acre in the railroad right-of-way, and the trial court did not err in so holding."

Under these counter propositions appellee contends that the description of block No. 3, as given in the lease, manifested an intention by the parties to exclude the right of way from the land conveyed, that is, to exclude the 77/100 of an acre of land in controversy. On that point, appellee pleaded: "Said Block No. 3 is limited as to its southwest boundary by the eastern line of the T. & N. O. Railroad Company right-of-way." That argument was met and answered by our Supreme Court in Rio Bravo Oil Co. v. Weed, supra, and as the principles of law announced in that case must govern the construction of this lease, we conclude that the description of block No. 3, as given in the lease, did not manifest an intention to exclude the right of way from the land conveyed. That point was before the court in the Sutter Case, supra, and overruled; the court held that the interpretative test was not that the lease disclosed no intention to convey the right of way, but the test is whether the lease expressed an intention to exclude the right of way.

Appellee concedes that the "intention of the parties" manifested in the deeds through and under which it holds carried its fee title to the center of the railroad right of way. It was forced to this construction of its deeds for the title to the 77/100 of an acre of land rested in the doctrine of Rio Bravo Oil Co. v. Weed, but, as manifested by its counter propositions, it denies that the lease in issue is subject to the same construction as the deeds through which it holds.

The attending facts support the conclusion that it was not the intention of Oakwood Realty Company, in executing its lease to Gulf Production Company, to retain title to the oil under the railroad right of way. It did not control the surface rights of the land in controversy, and had no power to devolop it for oil. Why should it have had "an intention" to retain something of no value to it? On that point the court said in the Corn Case, supra: "In the instant case, we find Buffington granting an oil and gas lease on 33.5 acres of land, a portion of which abuts on a railroad right of way. Buffington owned the surface rights free from easement in all of this land, except that portion in and across which he had conveyed a right of way to the railroad company. At the time this oil and gas lease was granted, the right of an adjoining owner to go upon a railroad right of way and drill for and produce oil and gas thereon was at least doubtful. We have recently held that such right does not exist. See Midland Valley R. Co. v. Sutter et al. No. 8080 (opinion filed July 30, 1928) 28 F. (2d) 163. If the contention of counsel for the defendants is correct, Buffington leased all of the land on which he had retained the surface rights and had the right to drill for and produce oil and gas, and retained or excepted the oil and gas in the right of way tract wherein he did

not own the surface rights, and on which he could not drill for and produce oil and gas, placing himself in a situation where he had excepted oil and gas which he could not possibly mine for and produce. In view of these circumstances, we think it exceedingly doubtful that Buffington intended to except the oil and gas in the right of way tract." It is our conclusion that appellee's counter propositions do not invoke the correct rules of law for the construction of the lease in issue.

We pretermit a discussion of appellants' other propositions.

The judgment of the lower court is reversed and judgment here rendered that appellee recover nothing in this litigation, and that appellants go hence without day and recover their costs.

Reversed and rendered.

### On Rehearing.

The following assignments of error presented by appellee's motion for rehearing are not covered by the original opinion:

### "XIX.

"(a) The judgment of this court cannot be sustained by the judgment in the case of Weed v. Rio Bravo Oil Co., because the judgment in that case was not an adjudication that the Gulf Company had a valid lease on the right of way tract.

### "XX.

"There was involved in Weed v. Rio Bravo Oil Company suit the question of ownership of the minerals underlying the railroad tract as between the railroad company and the owner of the abutting land. There was no issue in that case as to the rights inter se of the owner of the abutting land and his lessee of said land as respect to the oil underlying the right of way tract; and the judgment in Weed v. Rio Bravo did not and could not therefore adjudicate or determine any rights as between the parties to this suit which could in anywise affect or control the legal effect of the lease from the Oakwood Company to the Gulf Production Company; hence the judgment of this court awarding the Gulf Production Company recovery for the minerals produced from said right of way tract cannot be sustained by the judgment in the Rio Bravo Oil Company case."

We think a sufficient answer to this contention is our citation in the original opinion of Roxana Petroleum Corporation v. Sutter, which presented to the court for decision the very question presented by this case—"the rights inter se of the owner of the abutting land and his lessee of said land as respect to the oil underlying the right of way tract"—and which was cited by the Commission of Appeals in Rio Bravo Oil Company v. Weed as one of the controlling authorities, with this striking introduction to the citation: "The Circuit Court of Appeals, of which Judge Sanborn was a member, reached the same conclusion."

█ (b) It is contended that we are in conflict with Couch v. Railway Co., 99 Tex. 464, 90 S.W. 860, and Cox v. Campbell (Tex.Civ.App.) 80 S.W.(2d) 1000, 1003 (writ granted). In these cases the grantor owned land on both sides of the right of way; in the case at bar no such condition was shown to exist. In emphasizing the distinction between the facts of the Couch Case and this case where the grantor owned land only on one side of railway right of way, the Commission of Appeals said in Rio Bravo Oil Co. v. Weed, supra:

"The case of Couch v. Railway Co., 99 Tex. [464] 467, 90 S.W. 860, is cited to sustain the proposition that the presumption applicable to public highways and streams does not apply in case of a conveyance of land bounded by a railroad right of way. This expression used by Judge Brown is cited as indicative of such holding: 'The right of way of a railroad is not a public highway, in the sense of a public road or street, and the rule of construction which applies to a deed for land bounded by a public highway does not apply in this case so as to make the deed convey land not included in its terms.'

"This language standing alone would seem to sustain plaintiff in error's view, but, when construed in connection with that which immediately follows, there is no such result. Immediately following the language above quoted Judge Brown states: 'At the time the deed from Couch to Norton and McGowen was made Couch owned the land on both sides of the railroad, and after the sale the entire right of way remained in connection with his land south of the railroad.'

"He then continues: 'Under this state of facts there is no ground for a presump-

tion that Couch intended to convey that portion which lay between the line described in the deed and the railroad track.' * * *

"It is thus made clear that the presumption was not applied in that case by the distinguished jurist who rendered the opinion for the obvious reason that the grantor owned lands on both sides of the railroad. His failure to convey to the center of the railroad right of way did not leave a narrow strip of land disconnected from any other tract. Such strip was as much an appurtenant to the grantor's remaining tract as it was to the tract conveyed. It was as valuable to him as a part and parcel of his remaining tract as it was to the grantee. Evidently Judge Brown declined to apply the presumption because of the recited fact that the grantor, at the time of the conveyance, owned land on both sides of the railroad right of way. There was no other reason for his stating such fact except for the purpose of showing that no basis existed for the application of this presumption. * * *

"The prime object and purpose of such rules is to enable them to ascertain and give effect to the true intention of the parties unless such intention is inconsistent with some settled rule of law. In construing a deed, effect must be given, if possible, to every part of the deed, each clause being considered separately and being governed by the intention of the parties fairly deducible from the provisions of the entire instrument. In other words, the intention must be gathered primarily from a fair consideration of the whole instrument, and the language employed therein, and the construction given it should harmonize with the terms of the deed, including its scope, subject-matter, and purpose."

Recognizing the distinction made by the Commission of Appeals, the court, in Cox v. Campbell, supra, quoted as above from the Rio Bravo Case and then continued as follows: "Here, as in the Couch Case, the contention is that a presumption exists that a grantor, conveying land abutting upon a railroad right of way, intends to convey to the center of the right of way. But in this case, as in that, the grantor owned land at the time of his conveyance on both sides of the right of way." Because of the difference in the facts, we are not in conflict with the Couch and Cox Cases.

(c) Appellee insists that, to have the benefit of the rule announced by the Supreme Court in the Rio Bravo Case, appellants rested under the burden of showing that their lessor did not own the land on both sides of the railroad right of way, and that they failed to discharge that burden. This point is one of rebuttal, and appellee and not appellants had the burden of showing—if such was the fact —that appellants' lessor owned the land on both sides of the railroad right-of-way.

## "XXVII.

"(d) The evidence was conflicting upon the proposition as to whether the Oakwood Company's president, Mr. Cartwright, prior to the execution of the lease in question, went upon the ground and specifically pointed out the tract to be covered by the lease, which designation did not include the railroad right of way tract. Since this conflicting issue of fact was not submitted to the jury, or request made for submission, it will be presumed in support of the judgment rendered by the trial court that such issue was determined in such a way as to support the judgment; hence the situation is this: The parties to this lease have specifically agreed that it was not to cover the railroad right of way tract, and such agreement was tantamount to an express reservation by the grantor of the right of way tract from the lease and this court erred in not so construing the lease contract as to give effect to the intention of the parties thereto as clearly and plainly appears from their acts and conduct.

## "XXVIII.

"Since under the presumed finding of the trial court, the parties to this lease prior to its execution actually went upon the ground and the lessor pointed out to the lessee the land to be covered by the lease as extending only to the outside line of the railroad right of way, the law will not presume that the lease was intended to cover other and different land from that actually designated on the ground but will regard the acts of the parties under such circumstances as effecting a reservation by the lessor of the minerals in the right of way tract from the operation of the lease.

"The facts being undisputed:

"(a) That the 200 foot right-of-way was a separate conveyance in fee simple, with no defeasance clause therein, vesting in

the Railway Company all the land and all 'the earth, stone and mineral therein,' save and except oil and minerals of that class reserved as matter of law to Mrs. Janes;

"(b) And the fact that the terms of the lease in controversy from the Oakwood Company to the Gulf Company in unambiguous language conferred upon the latter the restricted and contingent right to exploit the minerals by drilling wells on the land specifically described in the lease, exclusive of the railroad tract or right-of-way;

"(c) And the fact that neither the lessor nor the lessee had the right or power to enter upon the right-of-way and drill wells for the purposes plainly evidenced by the lease contract in question, but only as to the area entirely outside the railroad right-of-way which excluded by metes and bounds the railroad tract;

"(d) And the fact that the parties themselves, as testified to by Mr. Cartwright and denied by Mr. Bordages, but presumptively found and determined by the trial court, no complaint thereof having been made in the appellate court, expressly agreed at the time said contract was being executed, and in complete conformity with the written terms of that instrument, that the intention was to limit the land on which the lease was given, and all rights thereunder, to the area east of the fenced right-of-way:

"Such facts, so appearing in the record, and the legal effect thereof being to establish as matter of fact that there was no intention to include any part of the railroad right-of-way in that instrument, but such intention was thereby expressly negatived, it was error in this court to assume and presume without evidence,—the burden being upon the lessee to establish the basic facts upon which the assumed presumption could be predicated,—that the lessor did not own land on the west side of the railroad right-of-way, but only on the east side thereof, thereby seeking to escape the conclusive effect of the decision of the Supreme Court in Couch v. Railway Company, re-affirmed in Rio Bravo v. Weed.

"This court, therefore, is in error in presuming, contrary to the finding and decision of the lower court, and of the Supreme Court in the cases cited, that such condition of fact existed as a basis and predicate for the further presumption

that the Oakwood lease extended to the center of the railroad right-of-way and included the 77/100 acres of land not embraced in the field notes of the lease, and contrary to the express purpose and intention of the parties inter sese."

If there was a conflict as to whether or not "Mr. Cartwright, prior to the execution of the lease in question, went upon the ground and specifically pointed out the tract to be covered by the lease, which designation did not include the railroad right-of-way tract," as assigned by appellee, the conflict presented an issue of fact for the jury, which the court had no power to decide by instructing a verdict in favor of appellee; an instructed verdict against conflicting evidence presents fundamental error, requiring reversal of the judgment of the lower court. Harlington Land & Water Co. v. Houston Motor Car Co. (Tex.Com.App.), 209 S.W. 145. But appellee does not ask us to reverse the judgment and remand the cause that the issue on the conflict may be tried to a jury, but insists that the court correctly decided that issue in his favor. That contention, as just stated, cannot be sustained; and, since it asks no other relief, this assignment, for that reason, must be overruled.

But, for this additional, fundamental reason, this assignment is without merit. On the face of the lease made by appellee to appellants, by the very terms of that lease, by the use of language many times construed by the courts where the issue of title to the center of a way was under consideration—language of identical import—appellants acquired title to the center of the right of way. The language of the lease was not ambiguous; its legal significance was perfectly clear; therefore, parol evidence to the effect that "Mr. Cartwright, prior to the execution of the lease in question, went upon the ground and specifically pointed out the tract to be covered by the lease, which designation did not include the railroad right-of-way tract," was not admissible, but if received, was without probative force in the construction of the lease. 18 C.J. 252. This rule was given controlling effect by the Commission of Appeals in the Rio Bravo Case.

(e) As the Supreme Court has jurisdiction of every point in this case, appellee's motion to certify is overruled.

The motion for rehearing is in all things overruled.